394 So.2d 871 (1981)
Shannon Clayton SAXTON
v.
STATE of Mississippi.
No. 52278.
Supreme Court of Mississippi.
February 18, 1981.
Rehearing Denied March 18, 1981.
Perry E. Brown, Jr., Jackson, for appellant.
Bill Allain, Atty. Gen. by Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, P.J., and SUGG and LEE, JJ.
SMITH, Presiding Justice, for the Court:
This case involves an appeal from the Circuit Court of the First Judicial District of Hinds County, wherein appellant was tried and convicted of the crime of armed robbery and sentenced to the custody of the Department of Corrections to serve a term of twenty-five years, with service of nineteen years suspended, six years to be served with five years on supervised probation.
*872 The State expressly accepts appellant's abstract of record and there is no dispute in the material facts of the case.
As stated in the brief filed on behalf of appellant Saxton, the facts were as follows:
On March 7, 1978, the Defendant was indicted for the July 6, 1977 armed robbery of Mrs. Jean Neighbors. Subsequent to the commission of the said crime, the Defendant was arrested in the State of Louisiana for the commission of the crime and incarcerated in Dixon Correctional Institute. On April 1, 1978, a detainer was placed against the Defendant in accordance with the request of the Jackson Police Department by the State of Louisiana, Dixon Correctional Institute.
On March 2, 1979, the Defendant filed a Motion for a Speedy Trial in the Circuit Court of the First Judicial District of Hinds County, Mississippi.
On April 6, 1979, a letter was sent to the Warden at Dixon Correctional Institute, asking that the Defendant be made available for trial on June 12, 1979. On April 11, 1979, the Louisiana Department of Corrections responded by letter, stating that Louisiana was not a party to the interstate compact on detainers, and the Defendant could only be transferred pursuant to an Extradition/Re-extradition Agreement. On June 25, 1979, the Attorney General's Office, State of Mississippi, pursuant to a request by the District Attorney's office, Hinds County, Mississippi, began extradition proceedings for the Defendant.
On July 30, 1979, the Defendant filed a Motion for Dismissal for Lack of a Speedy Trial.
On November 27, 1979, a hearing was held before the Honorable William F. Coleman, Circuit Judge, on Defendant's said Motion to Dismiss for Lack of a Speedy Trial. At said hearing, Defendant testified that while in the State of Mississippi he was in the companionship of a young lady, but since his incarceration in Louisiana, had lost contact with said alibi witness, due to the extended delay in bringing the Defendant to trial. That his parents had made numerous attempts to locate witness. The Defendant further testified that he had informed the Louisiana officials that he was willing to waive extradition as early as 1978, when he was advised of the hold on him. Defendant's Motion was overruled by the Court, the Trial Judge stating that since the Defendant had not been arraigned and that pursuant to 99-17-1 of the Mississippi Code of 1972, the 270-day period in which a person must [be] brought to trial does not begin until the Defendant has been arraigned.
On November 27, 1979, at 12:00 Noon, the Defendant was arraigned before the Circuit Court of the First Judicial District of Hinds County, Mississippi, Honorable William F. Coleman presiding, wherein the Defendant pleaded Not Guilty to the charge of armed robbery.
On November 27, 1979, some 19 months since indictment, the Defendant was tried and convicted for the crime of armed robbery. The Defendant was sentenced to a term of 25 years in the custody of the Mississippi Department of Corrections, 19 years suspended and five years supervised probation and six years to serve.
The single proposition advanced by appellant for reversal is stated in his brief as follows:
Section 99-17-1 of the Mississippi Code of 1972, as amended, denied the Defendant his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution, and Article III, Section 26 of the Constitution of the State of Mississippi.
The State of Mississippi points out that the single issue presented on appeal is whether or not Mississippi Code Annotated section 99-17-1 (Supp. 1980) denied the appellant his right to a speedy trial as guaranteed by the Sixth Amendment of the United States Constitution and Article III, Section 26 of the Mississippi Constitution. In connection with this conclusion, the State invites the court's attention to the fact that *873 the appellant did not challenge the constitutionality of section 99-17-1 in the trial court and therefore, the state asserts, the appellant is precluded from raising the issue on appeal under the well settled rule that "matters other than jurisdiction not raised in the trial court may not be raised for the first time on appeal." Citing Williamson v. State, 330 So.2d 272, 276 (Miss. 1976).
The crime occurred on July 6, 1977. Appellant testified that he was arrested and jailed in Louisiana on July 11, 1977 and placed in the Dixon Correctional Institute in Louisiana on February 2, 1978. On March 7, 1978 appellant was indicted in Mississippi and on that date Lt. Cumberland of the Jackson Police Department sent a letter, with a copy of the bench warrant, to the Dixon Correctional Institute, asking that a detainer be lodged against Saxton. By letter dated April 1, 1978, Lt. Cumberland was informed that a detainer against appellant was effective as of that date  April 1, 1978. On March 2, 1979 appellant filed a motion for a speedy trial in the Circuit Court of the First Judicial District of Hinds County, Mississippi. On April 5, 1979 the District Attorney called the Louisiana Department of Corrections, the Louisiana Attorney General's office and the Probation and Parole Board of Louisiana and ascertained that appellant was serving four years for attempted armed robbery and his release date was November 1, 1979. On April 6, 1979 the District Attorney's office wrote a letter to the warden of Dixon Correctional Institute stating that Saxton's case was set for trial on June 12, 1979 and asking the earliest date appellant could be available "for action on this matter pending in our jurisdiction."
On April 11, 1979, the Louisiana Department of Corrections wrote the District Attorney:
Louisiana is not a party to the Interstate Compact on Detainers. Therefore, we can only transfer Mr. Saxton to you pursuant to an Extradition/Re-Extradition Agreement.
On June 25, 1979, the requisite extradition papers were forwarded to the Mississippi Attorney General to be approved as to form and forwarded to the Governor of Louisiana.
On July 30, 1979 appellant filed a pro se motion for dismissal of charges against him. On August 24, 1979 appellant was served with a copy of the indictment at the Hinds County Detention Center. On October 1, 1979 an amended motion for dismissal was filed. On November 27, 1979, following a hearing on the motions, the motions were denied and the case proceeded to trial which resulted in appellant's conviction.
The State makes no issue of the fact that Lt. Cumberland is an arm of the prosecutor's office and his actions may be imputed to the prosecutor, although it is uncontradicted that, as a matter of fact, the District Attorney did not know the whereabouts of the appellant until the appellant had filed his motion for a speedy trial.
The State points out that Saxton waited over a year to request a speedy trial, even though he testified that he learned of the "hold" on him in March, 1978. As soon as the prosecutor learned of the whereabouts of appellant, he set in motion the legal proceedings to have him returned for trial which was originally set for June 12, 1979. The delay occasioned by the extradition proceedings was minimal and appellant was returned to Mississippi on August 24, 1979.
It is pointed out that the next time that appellant conceivably could have been tried would have been during the next regular term of the circuit court, which began the first Monday of September, 1979, scheduled to continue for thirty-six days. The case was set for trial and was tried on the first day of the November, 1979 term.
Appellant cites five decisions of the United States Supreme Court, contending that they support his contentions in this case. These cases are: Dillingham v. United States, 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205 (1975); Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970).
*874 The State takes issue with this conclusion and discusses each of the cited cases in its brief.
It is the State's position that the rule announced in Barker v. Wingo, supra, when applied to the facts of the present case, does not support the premise that appellant Saxton was deprived of a speedy trial.
In Barker v. Wingo, the United States Supreme Court reached the conclusion that, in cases in which a question is raised as to the denial of a defendant's right to a speedy trial, each case must be considered upon an ad hoc basis, and decided upon its own peculiar facts. Instead of attempting to categorize these cases, the Court, in Baker v. Wingo, set out a "balancing test" to be used in passing upon the question, and identified the factors to be considered. These were "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.
The United States Supreme Court said:
We have shown above that the right to a speedy trial is unique in its uncertainty as to when and under what circumstances it must be asserted or may be deemed waived. But the rule we announce today, which comports with constitutional principles, places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine, the demand rule aside.
We, therefore, reject both of the inflexible approaches  the fixed-time period because it goes further than the Constitution requires; the demand-waiver rule because it is insensitive to a right which we have deemed fundamental. The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed.
(407 U.S. at 529, 530, 92 S.Ct. at 2191, 33 L.Ed.2d at 116.)
The Court said further:
Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.
(407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.)
There is no suggestion in the present case of "a deliberate attempt (by the State) to delay the trial in order to hamper the defense", nor is there anything in the case to show bad faith on the part of the prosecution. On the other hand, it appears that as soon as the prosecuting authorities learned of Saxton's request to be tried steps were promptly begun to procure his return to Mississippi for trial, and there was no unreasonable delay in obtaining his return.
The fourth factor "prejudice to the defendant" is based largely upon Saxton's assertion that, because of delay, he could not locate an alibi witness whose name, he said, was "Sandy something", Saxton asserting that he did not know her name or whereabouts.
Saxton's memory remained vague as to the identity of this alleged female companion even after the State, on cross-examination, suggested to him that "Sandy something" was Sandy Ann Melson, also wanted in Rankin County, Mississippi on a criminal charge and whose whereabouts the State was anxious to learn.
In the light of Saxton's inability to supply information as to the whereabouts of the supposed "alibi" witness, even being unable to give her name, it is difficult to see how anything could have been done to procure the presence of this unknown person at any time. There is no imaginable case in which a similar claim might not be *875 made with impunity, since the identity of the claimed witness is unknown and thus the claim would be impossible of being contradicted or refuted by direct evidence. It is this type of "uncontradicted" testimony that is not necessarily conclusive upon the trier of facts, and may be given such weight, if any, as the trier of facts may judge that it merits. The statement of Saxton as to the existence of this unknown alibi witness, in the context of all of the evidence, was not sufficient to show that he was prejudiced by delay on the part of the State in bringing him to trial.
Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), cited by appellant, was a case in which the defendant made a written request for a speedy trial and continued to do so for the next six years. The United States Supreme Court said that there were procedures readily available to the State of Texas to bring him to trial but he was denied all relief. The United States Supreme Court concluded: "Upon the petitioner's demand, Texas had a constitutional duty to make a diligent, good-faith effort to bring him before the Harris County court for trial." (Id. at 383, 89 S.Ct. at 579, 21 L.Ed.2d at 614).
If we assume that the issue as to the constitutionality of Mississippi Code Annotated section 99-17-1 (Supp. 1980) had been properly presented in the lower court and, therefore, is before this Court on appeal, we have concluded that the statute is not unconstitutional.
Moreover, the decision of the question of the constitutionality or unconstitutionality of this statute is not necessary to a determination of this case. It is the conclusion of this Court that there was no bad faith on the part of the State in connection with the delay in bringing Saxton to trial, that the actions taken by the State after learning of Saxton's request for a speedy trial were reasonably and diligently pursued. Nor was it established (despite Saxton's claim that he was unable to locate "Sandy something") that Saxton suffered any prejudice by reason of the delay. Since no other challenge is made to Saxton's conviction of the crime of armed robbery, his conviction and sentence must be, and are, affirmed.
AFFIRMED.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.