512 So.2d 4 (1987)
Alvie Charles HUGHEY
v.
STATE of Mississippi.
No. 56308.
Supreme Court of Mississippi.
September 2, 1987.
*5 Mary Ann Smith, Corinth, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
Before WALKER, C.J., and PRATHER and SULLIVAN, JJ.
WALKER, Chief Justice, for the Court:
In the Circuit Court of Alcorn County, Alvie Charles Hughey was convicted of armed robbery. The jury being unable to fix his penalty, the trial court sentenced him to a term of fifteen (15) years. Hughey appeals that conviction and sentence. Finding no error, we affirm.
On the afternoon of April 29, 1981, Mr. and Mrs. Haley Haney were working in the small grocery store they owned on Proper Street in Alcorn County. At 4:00 p.m., two (2) men came into the store, but left without making any purchase. Approximately an hour later, they returned to the store, accompanied by a woman. While the woman asked to purchase some bologna, the two (2) men closed the doors to the store, which had been propped open because of the warm weather. After the doors were closed, one of the men demanded that Mrs. Haney give him her ring, which she did, and that Mr. Haney give him the money from the cash register. When Mr. Haney hesitated, one of the men, later identified as Alvie Hughey, threatened to shoot and kill Mrs. Haney. Hughey had "what appeared to be a gun", under his shirt, and Mrs. Haney saw "the prints of a gun" under his shirt, although Hughey "never took the gun out." Before Mr. Haney could remove the money from the cash register, Tommy Williams, a frequent customer, came to the door of the grocery store, intending to enter. While moving toward the other door along with his two (2) companions, Hughey again threatened to shoot Mrs. Haney unless someone gave him the money from the cash register. Mrs. Haney opened the door which Tommy Williams was approaching, informed him that the store was being robbed, and asked him to "call the law." Mr. Haney then took the money from the cash register and gave it to Hughey. As Williams left to call law enforcement officers, the trio exited the store with $200.00 in cash and the ring, which was a diamond cluster.
As he drove away to call the police, Williams encountered a red light and had to stop because of approaching vehicles which had the right of way. While Williams was stopped at the intersection, Hughey opened the door to Williams' car and got in. Hughey stated that he had robbed the store and that he had a gun. When Hughey instructed Williams to drive to "the projects," Williams did so. Hughey then got out of the car.
Before he could be apprehended, Hughey fled to New York state, where he was arrested for criminal possession of a weapon. After being convicted on that charge, he entered a New York prison in March of 1982.
In 1984, Hughey was tried on the armed robbery charge in the Circuit Court of Alcorn County; the jury returned a verdict of guilty, but could not reach an agreement as to penalty. The trial court then sentenced Hughey to serve a term of fifteen (15) years. He appeals, assigning three (3) errors.

*6 I. WAS THE EVIDENCE INSUFFICIENT TO CONVICT FOR ARMED ROBBERY?
Hughey argues that there was no evidence to prove that he exhibited a gun, and that he therefore could not be convicted of armed robbery. This argument is without merit. Hughey had under his shirt an object which looked like a gun. Mrs. Haney testified that she saw "the prints of a gun." Immediately after the robbery, Hughey himself told Tommy Williams that he had a gun. This evidence, along with the reasonable inferences flowing therefrom, was sufficient to present a jury question as to whether Hughey exhibited a deadly weapon. Valentine v. State, 415 So.2d 687, 689 (Miss. 1982).

II. DID THE COURT ERR IN CAUSING HUGHEY TO GO TO TRIAL ON THE DAY HE WAS ARRAIGNED, AND IN CAUSING HUGHEY TO GO TO TRIAL ON A DATE NINE DAYS AFTER HIS COUNSEL WAS NOTIFIED THAT SHE WAS APPOINTED TO REPRESENT HIM?
Hughey moved for a continuance, alleging that he needed more time to prepare his claim of a violation of his right to a speedy trial. Although the trial court denied the continuance, an evidentiary hearing on Hughey's speedy trial claim was conducted after trial. The merits of that claim are discussed with regard to the next assignment of error. The grant or denial of a continuance lies within the sound discretion of the trial court. Gates v. State, 484 So.2d 1002, 1006 (Miss. 1986); Carter v. State, 473 So.2d 471, 475 (Miss. 1985). We find no abuse of that discretion in the instant case.

III. WAS THE DEFENDANT DENIED HIS RIGHT TO A SPEEDY TRIAL?
The following is a chronology of the events involved in this claim:

April 29, 1981 The robbery with which Hughey was
 charged occurred.
May, 1981 Hughey was indicted for armed robbery.
September 9, 1981 Hughey was arrested in New York state on
 a weapons charge.
March 5, 1982 Hughey entered a state prison in New York
 to serve two to six (2-6) years for the weapons
 conviction.
April 22, 1982 New York correctional officer notified Mississippi
 Assistant Attorney General by mail
 that the Mississippi detainer lodged against
 Hughey had been received, that Mississippi
 authorities would be notified before Hughey
 was released, and that the Mississippi "warrant
 [was] not eligible for speedy trial."
 That same day Hughey executed a document
 entitled "Agreement on Detainers:
 Form II," which contained a notice of place
 of imprisonment, request for disposition of
 indictments, and waiver of extradition. Had
 Mississippi been a party to the Interstate
 Agreement on Detainers, then Mississippi
 would have been required, within 180 days
 of Hughey's waiver, to try him or remove
 the detainer. Mississippi, however, is not a
 party to the IAD. The document was not
 effective to waive extradition. It is not
 clear whether this document was sent to
 Mississippi officials.
September, 1982 Hughey, having been informed by legal services
 that Mississippi was not a party to
 IAD, wrote to a Mississippi Assistant Attorney
 General and to the Chief Judge of the
 Circuit Court of Alcorn County, asking that
 he be tried at the earliest possible date.
October 21, 1982 District Attorney John R. Young wrote to
 Rodney Moody, a New York corrections official.
 In the letter, which was apparently a
 follow-up to a telephone call, the district
 attorney thanked Moody for advising him of
 the "papers needed by [the New York prison]
 to return [Hughey to Mississippi] for
 trial." The letter ended, "Would you please
 send me your Interstate Forms 6 and 7 so
 that I can be sure to have what you need."
December 3, 1982 District attorney wrote to Hughey, telling
 him that he should sign a waiver of extradition
 so he could be tried in January of 1983.
 The district attorney stated in the letter that
 Hughey should see Rodney Moody, who
 would furnish him with the appropriate
 forms.
January 4, 1983 Rodney Moody wrote to Hughey, stating the
 following: "This is in response to your recent
 communication indicating that I was to
 furnish you with the appropriate forms for
 Waiver of Extradition for the State of Mississippi.
 My records indicate that you
 signed the correct form ... on April 22,
 1982. For your information I am enclosing
 a copy of that form." The document to
 which Moody referred was the IAD form.
February 22, 1983 Prisoners' Legal Services of New York
 wrote to Hughey, responding to his letter
 and telling him that he had done everything
 possible to get Mississippi to prosecute.
May 17, 1983 Hughey wrote to a Mississippi Assistant Attorney
 General and to the Chief Judge of
 the Circuit Court of Alcorn County, asserting
 his right to a speedy trial and stating, by
 affidavit, that he had waived extradition.
July 20, 1983 New York informed the district attorney
 that Hughey would be released on September
 20, 1983.
October 4, 1983 The district attorney began extradition procedures.
 New York continued to hold Hughey
 for Mississippi.
November 29, 1983 Governor of New York signed extradition
 order.
*7 December 19, 1983 The day before New York would have released
 Hughey (they would hold him on detainer
 for 90 days past his release date)
 Mississippi authorities went to New York
 and transported him to Mississippi.
February 1, 1984 Hughey was tried in Mississippi for armed
 robbery.

In determining whether a defendant's constitutional right to a speedy trial has been violated, we utilize a four-part balancing test set forth by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and applied by this Court in numerous cases, the most recent of which is Kinzey v. State, 498 So.2d 814 (Miss. 1986). The factors to be considered are 1) length of delay, 2) reason for delay 3) defendant's assertion of the right, 4) prejudice to the defendant.
In regard to the length of the delay, we note that Hughey was tried approximately thirty-three (33) months after he was indicted. The State attempts on appeal to persuade us that Hughey became an accused, for purposes of computing the length of delay, only when the detainer was lodged against him in April of 1982. The State cites Perry v. State, 419 So.2d 194, 199 (Miss. 1982), where we held that Perry became an accused when a detainer was lodged against him. The State misconstrues our holding in Perry. Because the detainer was lodged against the defendant in Perry before he was indicted, we held that the defendant became an accused at the time of the detainer. In the instant case, however, Hughey was indicted in May of 1981, long before the detainer was ever lodged against him. "The constitutional right to a speedy trial, ... attaches at the time of a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." Perry, 419 So.2d at 198 (emphasis added). In the case at bar, Hughey became an "accused" when he was indicted in May of 1981. Therefore, the length of the delay which we consider in determining whether Hughey's constitutional right to a speedy trial was violated, is thirty-three (33) months. Violation of the constitutional right to a speedy trial has been found in cases involving lesser delays. Beavers v. State, 498 So.2d 788, 790 (Miss. 1986) (fourteen (14) months); Perry v. State, 419 So.2d 194 (Miss. 1982) (nineteen (19) months).
In assessing the reason for the delay, we consider the State's argument that Hughey could not be brought to Mississippi for trial because he was incarcerated in a state prison in New York. Nothing in the record or the briefs clarifies for us what, if anything, Mississippi could have done to procure Hughey's extradition before the completion of his New York prison term. The district attorney testified at the evidentiary hearing that New York simply "would not let Mississippi have Hughey." Two (2) letters appear in the record from New York authorities to Mississippi authorities which contain the statement, "This warrant [Hughey] is not eligible for a speedy trial." It appears that the district attorney contacted Rodney Moody with the New York Department of Corrections, and was told by Moody what steps would be necessary in order for Hughey to be returned to Mississippi for trial before the completion of his New York prison term. The district attorney wrote to Moody, thanking him for the information and asking that the necessary forms be sent to the district attorney. Although no further mention of these forms appears in the record, there does appear a letter from the district attorney to Hughey, instructing Hughey to waive extradition and obtain the appropriate forms to do so from Rodney Moody. Unfortunately, Rodney Moody believed, and so informed Hughey, that Hughey had waived extradition when he signed the IAD forms in April of 1982. When Hughey contacted Prisoners' Legal Services of New York, he was again told that he had done everything possible to get Mississippi to try him.
When a defendant incarcerated in another state asserts his right to a speedy trial, the state seeking to prosecute him must make a diligent, good-faith effort to bring him to trial. Smith v. Hooey, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607, 614 (1969); Saxton v. State, 394 So.2d 871, 875 (Miss. 1981). The record in the case at bar reveals that the district attorney *8 contacted New York officials by telephone and by letter in an attempt to have Hughey returned to Mississippi for trial. Furthermore, the district attorney wrote to Hughey, informing him that he would have to waive extradition in order to be returned to Mississippi. The district attorney by these actions fulfilled his duty to make a diligent, good-faith effort to have Hughey returned to Mississippi for trial. Therefore, we hold that the reason for the delay weighs heavily in favor of the State.
The next factor we consider is the defendant's assertion of his right to a speedy trial. Suffice it to say that, as described above, Hughey was diligent in his assertion of this right.
Next we consider the prejudice to the defendant. Hughey has made no allegation, in the trial court or on appeal, that he lost witnesses or was otherwise prejudiced in the trial of the case. Although he argues on appeal that various aspects of prison life in New York were more difficult for him because of the detainer, we note that, had he been tried in Mississippi, convicted (as he ultimately was), and then returned to New York to complete his term, the effect on his prison life would have been the same as that resulting from the detainer. We find no prejudice resulting to Hughey by virtue of this delay.
In balancing these Barker factors, we conclude that Hughey was not denied his constitutional right to a speedy trial. Because this and the previous assignments of error are without merit, we affirm the conviction and sentence.
AFFIRMED.
ROY NOBLE LEE, and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
ROBERTSON, J., concurs in parts I and II and dissents in part III with written opinion.
ROBERTSON, Justice, dissenting:

I.
Today's appeal presents a serious question regarding the right of one criminally accused to a speedy trial. The case arises in the context of persistent assertion of the right by a Mississippi indictee imprisoned in New York. In such context this state was obligated to proceed with due diligence to honor the indictee's demand for a speedy trial. Waiting a year and a half before commencement of formal extradition proceedings is not only not due diligence; it is gross neglect, made the worse by feeble and intermittent telephone and letter inquiries of New York officials, bottomed out by this state's weak-kneed acquiescence in New York's bureaucratic bungling.

II.
In May, 1981, Charles Hughey was indicted for armed robbery in Mississippi. On September 9, 1981, Hughey was arrested in New York state on a weapons charge. On March 5, 1982, Hughey entered a state prison in New York to serve two to six (2-6) years for the weapons conviction.
On April 22, 1982, a New York correctional officer notified an Assistant Attorney General of Mississippi that the Mississippi detainer lodged against Hughey had been received, that Mississippi authorities would be notified before Hughey was released and that the Mississippi "warrant [was] not eligible for speedy trial." That same day Hughey signed an "Agreement on Detainers: Form II", which included a waiver of extradition. However, it turned out that this document was not effective to waive extradition, because Mississippi was not a party to the Interstate Agreement on Detainers (IAD), as was New York.
In September, 1982, Hughey was informed by Legal Services that Mississippi was not a party to the IAD. Thereafter, Hughey wrote to a Mississippi Assistant Attorney General and to the Chief Judge of the Circuit Court of Alcorn County, asking that he be tried at the earliest possible date.
*9 On October 21, 1982, District Attorney John R. Young wrote to Rodney Moody, a New York corrections official. In the letter, which was apparently a follow-up to a telephone call, District Attorney Young thanked Moody for advising him concerning the papers needed by New York to return Hughey to Mississippi for trial. Further, Young requested that Moody send him the appropriate forms necessary to get Hughey back.
On December 3, 1982, Young wrote Hughey, instructing him to sign a waiver of extradition so that he could be tried in January of 1983. District Attorney Young instructed Hughey to see Rodney Moody, who would furnish him with the appropriate forms.
In response to Hughey's request for the necessary forms, Moody wrote back stating that his records indicated Hughey had signed the correct form back on April 22, 1982. It turned out that this was the IAD form that Hughey had signed, which was not an effective waiver of extradition due to the fact that Mississippi was not a party to the IAD.
On May 17, 1983, Hughey again wrote to a Mississippi Assistant Attorney General and to the Chief Judge of the Circuit Court of Alcorn County, asserting his right to a speedy trial and stating, by affidavit, that he had waived extradition.
On July 20, 1983, New York informed District Attorney Young that Hughey would be released on September 20, 1983. Thereafter on October 4, 1983, Young began extradition procedures. New York continued to hold Hughey for Mississippi.
The governor of New York signed Hughey's extradition order on November 29, 1983. On December 19, 1983, the day before New York would have released Hughey (they would hold him on detainer for ninety days past his release date) Mississippi authorities went to New York and transported Hughey to Mississippi. On February 1, 1984, Hughey was tried in Mississippi for armed robbery.

III.

A. Speedy Trial Generally

Four factors are balanced in determining whether the defendant received a speedy trial: (1) length of delay, (2) reason for delay, (3) defendant's assertion of the right, (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972); Kinzey v. State, 498 So.2d 814, 816 (Miss. 1986); Beavers v. State, 498 So.2d 788, 790 (Miss. 1986). No one of these factors is dispositive; indeed, the totality of the circumstances must be considered. Kinzey, 498 So.2d at 816; Beavers, 498 So.2d at 790; Burgess v. State, 473 So.2d 432, 433 (Miss. 1985); Bailey v. State, 463 So.2d 1059, 1062 (Miss. 1985).
The burden for bringing a defendant to trial in a timely manner rests with the state. Perry v. State, 419 So.2d 194, 199 (Miss. 1982); see also Barker v. Wingo, 407 U.S. at 527-29, 92 S.Ct. at 2190-91, 33 L.Ed.2d at 115-16 (1972); Estrada v. State, 611 P.2d 850, 854 (Wyo. 1980). Where there has been an unreasonable delay, it is therefore incumbent upon the state to prove that the delay in bringing the defendant to trial was reasonable and necessary. Estrada, 611 P.2d at 854; see also State v. Tilly, 737 P.2d 484, 486 (Mont. 1987) (unreasonable delay shifts burden to state to prove reasonableness and lack of prejudice); Hayes v. State, 487 So.2d 987, 992 (Ala.Cr.App. 1986) (prosecution bears burden of justifying delay).

B. Length of Delay

Here there was a delay of 33 months between indictment and trial. As noted in the proposed opinion, this Court has found lesser delays as violative of one's constitutional right to a speedy trial. See Beavers, 498 So.2d at 790 (fourteen (14) months); Bailey, 463 So.2d at 1062 (ten (10) months); Perry, 419 So.2d at 199 (nineteen (19) months). No doubt a delay of 33 months is prima facie unreasonable; therefore, the focus of inquiry shifts to the reason for delay.

*10 C. Reason For Delay

The first four months of delay  from May until September, 1981  may be explained by Hughey's avoidance of Mississippi law enforcement authorities. He was at large. At some time between September, 1981, and April, 1982, Mississippi authorities learned of Hughey's incarceration in New York and lodged a detainer against him. Before learning of Hughey's New York detention, this state's delay was reasonable. Thereafter, it was not.
Once Mississippi got around to commencing formal extradition proceedings, Hughey was back in Mississippi within two months. The fact that it took the state 22 months, instead of two months, to bring Hughey to trial is what makes the delay unreasonable. Why this is so emanates from established speedy trial jurisprudence.
When a defendant incarcerated in another state asserts his right to a speedy trial, the state seeking to prosecute him must make a diligent, good-faith effort to bring him to trial within a reasonable time. Smith v. Hooey, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607, 614 (1969); Dickey v. Florida, 398 U.S. 30, 37, 90 S.Ct. 1564, 1568, 26 L.Ed.2d 26, 31-32 (1970); State v. Newcomer, 48 Wash. App. 83, 87, 737 P.2d 1285, 1287 (1987); Henager v. State, 716 P.2d 669, 673 (Okla. Crim. App. 1986); State v. Robbins, 708 P.2d 227, 233-34 (Mont. 1985); People v. Shue, 145 Mich. App. 64, 377 N.W.2d 839, 843 (1985); Vierrether v. State, 583 P.2d 1112, 1115 (Okla. Crim. App. 1978); Ex Parte Slaughter, 377 So.2d 632, 633 (Ala. 1979); Miracle v. Jackson Co. Dist. Ct., 521 P.2d 837, 838 (Okla. Crim. App. 1974); Hadlock v. State, 93 Idaho 915, 478 P.2d 295, 297 (1970); Renton v. State, 480 P.2d 624, 626 (Okla. Crim. App. 1970); Rudisill v. Dist. Ct., Second Judicial Dist., 453 P.2d 598, 599 (Colo. 1969); see also Saxton v. State, 394 So.2d 871, 875 (Miss. 1981). This good-faith requirement applies as soon as the state learns a suspect against whom it has a detainer is in custody within another jurisdiction. Henager, 716 P.2d at 673. Further, a good-faith, diligent effort includes an attempt to secure the prisoner via extradition proceedings within a reasonable time. See Henager, 716 P.2d at 673; State v. Robins, 708 P.2d at 233-34; Ex Parte Slaughter, 377 So.2d 632, 633 (Ala. 1979); Vierrether, 583 P.2d at 1115; Miracle, 521 P.2d at 838; Renton, 480 P.2d at 626. A filing of detainer alone is insufficient to satisfy the good-faith, diligent requirement. Morris v. McGee, 180 N.W.2d 659, 664 (N.D. 1970).
Here, since there was a delay of 33 months between the time of indictment and the time of trial, the State had the burden of proving that such a delay was reasonable and necessary. This burden of proof must be considered in light of the State's duty to act diligently and in good-faith to see that Hughey had a speedy trial. This duty included institution of extradition proceedings within a reasonable time after the State learned of Hughey's incarceration in New York.
At the very latest, Mississippi was aware of Hughey's imprisonment in New York by April 22, 1982. Due to Hughey's agreement to waive extradition, the activity necessary to satisfy the good-faith, diligent requirement on behalf of the State was minimal. That is, since Hughey agreed to waive extradition, there was no need to institute formal extradition proceedings to get him back to Mississippi.[1] Therefore, all the State needed to do was ensure that Hughey received and executed the appropriate papers effecting a waiver of extradition. The Stae did not diligently pursue this task.
In October, 1982, District Attorney Young wrote New York Correctional Officer Moody, apparently in a follow-up to a previous telephone call, requesting appropriate forms necessary to get Hughey back to Mississippi. In December, 1982, Young wrote Hughey, instructing him to sign a waiver of extradition, and to contact Moody who would furnish him with the appropriate *11 forms. After this, Young did nothing more until New York informed him on July 20, 1983, that Hughey was being released on September 20, 1983. Suddenly Mississippi seemed to move quite swiftly in instituting extradition proceedings, in stark contrast to its response to Hughey's initial request for trial and waiver of extradition.
As this Court has held in Perry v. State, 419 So.2d 194, 199 (Miss. 1982):
Where the defendant has not caused the delay, and where the prosecution has declined to show good cause for the delay, we must weigh this factor against the prosecution.
Here the defendant has not caused the delay, and the prosecution has declined to show good cause for the delay.
The State's response is lame indeed. In effect the State says, "We asked for Hughey but New York said no." I have never known this state's prosecuting authorities to be so timid. Under the law, the state was obligated not to take no for an answer. Due diligence demands nothing less than commencement of formal extradition proceedings  in April of 1982, not October of 1983. Of course, if Mississippi had gone the formal extradition route and had then been rebuffed, we might have a horse of a different color. In the present context, I find it inescapable that the state has no reasonable excuse for the last twenty-two months' delay. Therefore, the Barker factor of reason for delay must be weighed against the prosecution.

D. Defendant's Assertion of Right

As noted in the majority opinion, Hughey was certainly diligent in asserting his right to a speedy trial. He wrote Mississippi officials twice, requesting he be tried as soon as possible. Enough said.

E. Prejudice

Prejudice is assessed in light of the interest of the defendant which the right to a speedy trial is designed to protect: (1) prevention of oppressive pre-trial incarceration, (2) minimization of anxiety and concern of the accused and (3) limitation of the possibility of impairment of defense. Barker, 407 U.S. at 532-33, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. The most serious of these is the last. Id.
In the first place, Hughey spent 89 days in jail in New York because of this state's delay. Hughey's New York release date was September 20, 1983. Because this state was so dilatory in commencing extradition proceedings, he was not in fact released in New York until December 19, 1983. Delay-caused adverse impact upon his defense at trial is not the only form of prejudice contemplated by Barker. Bailey v. State, 463 So.2d 1059, 1063-64 (Miss. 1985); Perry v. State, 419 So.2d 194, 199-200 (Miss. 1982).
The majority urges because Hughey has made no allegation that he lost witnesses or was otherwise prejudiced, he therefore suffered no prejudice. However, Hughey need not affirmatively demonstrate that he has been prejudiced in order to prevail on speedy trial grounds. Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183, 185 (1973); Warren v. United States, 436 A.2d 821, 835 (D.C. 1981); United States v. Bolden, 381 A.2d 624, 628 (D.C. 1977). Indeed, under Barker, the showing of unreasonable delay creates a presumption of prejudice. See Barker, 407 U.S. at 530, 92 S.Ct. at 2182, 33 L.Ed.2d at 117; State v. Wilson, 35 Md. App. 111, 371 A.2d 140, 149 (1977); aff'd. Wilson v. State, 281 Md. 640, 382 A.2d 1053 (1978); see also State v. Tilly, 737 P.2d at 486 (unreasonable delay shifts burden to state to prove reasonableness and lack of prejudice).
The length of delay in the instant case strikes at the very heart of the most serious interest of the defendant that the speedy trial right is designed to protect: the possibility that the defense will be impaired. Certainly a period of 33 months between indictment and trial renders memories of any available witnesses far less keen than if the defendant had been tried within a reasonable time period. See Perry, 419 So.2d at 199-200. Further, as the United States Supreme Court discussed in Barker, when a defendant is locked up, he is hampered in his ability to prepare an adequate defense. 407 U.S. at 533, 92 S.Ct. *12 at 2193, 33 L.Ed.2d at 118. This is particularly true where the defendant is imprisoned in New York and is seeking to be tried on a charge in Mississippi. Accordingly, Hughey was prejudiced by the delay here, tilting the final Barker factor against the State and in favor of Hughey.

IV.
In the instant case, all of the Barker factors weigh in favor of Hughey, as discussed supra. Accordingly, Hughey was denied his right to a speedy trial secured via the Sixth and Fourteenth Amendments to the United States Constitution and by Article 3, Section 26 of the Mississippi Constitution of 1890. I would reverse and render.
NOTES
[1] Had there been a need to institute formal extradition proceedings, the State certainly failed the diligence test as it instituted extradition proceedings one year, five months and four days after the very latest date that it could have learned of Hughey's incarceration in New York.