ON WRIT OF CERTIORARI

PIERCE, Justice,
for the Court:
¶ 1. Virgil Johnson was convicted of aggravated assault in Hinds County Circuit Court. Johnson appealed, and the Court of Appeals affirmed his conviction and sentence. We granted certiorari. Because Johnson’s right to a speedy trial was not violated, and because Johnson was not prejudiced by the trial court’s refusal to grant Johnson’s for-cause challenges of two prospective jurors, we affirm the trial court and the Court of Appeals.
FACTS AND PROCEDURAL HISTORY
¶ 2. On February 28, 2006, Jeremy Boyd was shot foui* times at his home in Jack *1241 son, Mississippi. While at the hospital, Boyd told police officers that he had been shot by Virgil Johnson. Boyd also identified Johnson from a photographic lineup. On April 20, 2006, officers arrested Johnson, and he was indicted on February 6, 2007, and charged with aggravated assault and armed robbery. On April 4, 2007, a year after Johnson was arrested, he moved the court for a “fast and speedy trial.” Johnson was arraigned on April 16, 2007. His bond was set at $100,000, which he could not pay, so he remained in jail. Johnson filed a motion for a reduction in bond. On December 10, 2007, Johnson moved to dismiss for failure to grant a speedy trial. The trial court did not address any of Johnson’s motions.
¶ 3. Johnson’s trial was held March 11, 2008. At trial, Boyd testified as to what had occurred on the day he was shot. According to Boyd, he invited Johnson over to his home because he had planned to buy a vehicle and wanted Johnson’s advice. Boyd was a professional barber, and when Johnson arrived he offered to give him a haircut. After the haircut, Boyd recounted that he and Johnson smoked weed and played video games. Boyd noticed that Johnson had become quiet, and he asked Johnson if things were all right. Boyd continued to play the video game. Boyd recalled that his gun was on the floor beside his feet, and that he saw Johnson get up. Boyd said he thought Johnson had gone to the restroom, but instead, Johnson came up behind him and shot him in the back of the neck. Boyd testified that Johnson immediately shot him again. Boyd said that Johnson shot him two more times, even though he was pretending to be dead. Then, Johnson flipped Boyd over and took $1,900 that Boyd had planned to use to purchase the vehicle. According to Boyd, Johnson then fled the scene. Boyd called 911.
¶ 4. The jury convicted Johnson of aggravated assault. The Court of Appeals affirmed the conviction, finding no reversible error. Johnson petitioned for writ of certiorari, which this Court granted, and raises two issues.
I. Whether Johnson’s right to a speedy trial was violated.
II. Whether Johnson’s for-cause challenges should have been granted.
DISCUSSION
I. Whether Johnson’s right to a speedy trial was violated.
¶5. Johnson asserts that his constitutional right to a speedy trial was violated, because 680 days passed between the time of arrest and the date of his trial. The Court of Appeals found no merit in Johnson’s averment. We agree with the Court of Appeals, and affirm the trial court.
¶ 6. The Sixth Amendment to the United States Constitution provides an accused the right to a “speedy and public trial.”[1] And the Mississippi Constitution establishes an almost identical protection.[2] In Barker v. Wingo, the Supreme Court provided four factors to consider whenever a defendant claims that his constitutional right to a speedy trial has been violated: length of delay, reasons for delay, whether the defendant asserted his right to a speedy trial, and whether the defense suffered any prejudice from the delay.[3] *1242 Where the length of delay exceeds eight months, the delay is presumptively prejudicial and triggers further analysis of the remaining three Barker factors. These factors must be considered together with other relevant circumstances.[4]

Length of delay

¶ 7. In Smith v. State, this Court determined that a delay of eight months or longer is presumptively prejudicial.[5] But let us be clear; when the delay is presumptively prejudicial that does not mean that actual prejudice to the defendant exists. Rather, actual prejudice is determined at a different point in the Barker analysis. A “presumptively prejudicial delay” acts as a triggering mechanism for further inquiry into the Barker analysis, and shifts the burden to the State to show the reason for delay.[6] Even the United States Supreme Court recognized this logic in Doggett v. United States, when it noted that “as the term is used in this threshold context, ‘presumptive prejudice’ does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker inquiry.”[7]
¶8. Here, 680 days passed between Johnson’s arrest and his trial, so the delay is presumptively prejudicial. The benefit of this presumption is further examination of the Barker factors,[8] and the burden of persuasion shifts to the State to establish good cause for the delay.[9]

Reasons for delay

¶ 9. The Court of Appeals found the record contained evidence of the delay and noted the overcrowded docket as the reason. “Overcrowded dockets” falls within the realm of neutral reasons for delay but should be considered since the “ultimate responsibility for such circumstances must rest with the government.”[10] Contrary to what the dissent may believe, the record sheds light on the reason for delay. The trial court found the delay was necessary due to the backlog of cases, and noted that several, older cases were set before Johnson’s that may have caused his case to be put off until the court’s next term. Further, the State provided three trial dates from the computer system used throughout Hinds County, which showed that Johnson’s case had been set for trial three months after he was arraigned. At most, this prong weighs slightly against the State.

Whether defendant asserted his right to a speedy trial.

¶ 10. The State bears the burden of bringing a defendant to trial.[11] But where the defendant asserts his right to a speedy trial, “he gains far more points” *1243 under this prong of Barker}[12], Johnson asserted his right to a speedy trial. This prong weighs in Johnson’s favor.

Prejudice to the defendant

¶ 11. We start this discussion with this Court’s inconsistent analysis of this prong, and which party bears the risk of nonper-suasion. In State v. Ferguson, the Court proposed that “[w]here the delay has been presumptively prejudicial, the burden falls upon the prosecution” to show the lack of prejudice to the defendant.[13] The Ferguson Court relied on a Fifth-Circuit case, Prince v. Alabama,[14] to support this proposition. In Prince, the Fifth Circuit held that a defendant must first establish a prima facie case that his right to a speedy trial has been violated before the burden shifts to the State to show that the defendant was not prejudiced by the delay.[15] The defendant in Prince claimed “that his defense has been impaired due to the lapse of time both in the disappearance or death of key alibi witnesses and in the dimming of the memories of those witnesses who were available at trial,” and the record held evidence of personal prejudice to the defendant as well.[16] Further, the defendant in Ferguson had asserted claims of prejudice in the form of missing witnesses, and the record contained evidence of such. So in both cases, each defendant produced evidence of prejudice before the burden shifted to the State to show the lack thereof. But Johnson does not come close to showing a prima facie case of actual prejudice, nor does the record reveal that Johnson suffered any prejudice other than being incarcerated. This Court will not infer prejudice out “of the clear blue.”[17]
¶ 12. Until Ferguson, Mississippi case-law did not require that the State bear the burden under the fourth prong of Barker, where the delay was presumptively prejudicial.[18] And even after Ferguson, this Court has declined to shift the burden to the State in cases where the delay was presumptively prejudicial.[19]
¶ 13. In Moffett v. State, the defendant was incarcerated for 1,656 days before his trial, which the Court found presumptively prejudicial.[20] But even so, the burden remained with Moffett to show actual prejudice under the fourth prong of Barker.[21] In Jenkins v. State, 626 days passed between Jenkins’s arrest and his trial, which the Court found to be presumptively prej *1244 udicial.[22] The Court went on to discuss the remaining Barker factors. But the Court’s analysis under the “prejudice” prong of Barker never included shifting the burden from the defendant to the State to show the lack of actual prejudice, even though the delay was presumptively prejudicial.[23]
¶ 14. In Manix v. State, 1,430 days elapsed between the date of arraignment and trial.[24] Of course, this delay was presumptively prejudicial. Even so, the Court did not shift the burden to the State to show the lack of actual prejudice under the “prejudice” prong of Barker.[25]* And, in Sharp v. State, 731 days passed between Sharp’s arrest and trial, which exceeded the eight-month threshold and established presumptive prejudice.[26] Nevertheless, the Court did not shift the burden from the defendant to the State under the “prejudice” prong of Barker[27]
¶ 15. The dissent maintains that, “[I]n Ferguson, this Court followed Moore exactly,” with regard to the prejudice prong. But a closer reading of Moore v. Arizona indicates otherwise. In Moore, the United States Supreme Court addressed Arizona’s misreading of Barker, in which the court expressly rejected any notion that an affirmative showing of prejudice was necessary to prove a denial of a constitutional right to a speedy trial.[28] Moore was clear that under the prejudice prong, prejudice must be shown in order for the defendant to win that prong of Barker.[29] The Moore Court emphasized that no single factor is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial.[30] So while an affirmative demonstration of prejudice is not necessary to prove a denial of the constitutional right to a speedy trial,[31] common logic reveals that, if a defendant is to win the fourth prong of the Barker analysis, he must show that he, or his defense, suffered some type of prejudice.[32] A closer look at the clear prescription outlined in Barker reveals the same.
¶ 16. Under the prejudice prong of Barker, the Court is to consider prejudice to the defendant, bearing in mind three interests: (1) prevent oppressive pretrial incarceration; (2) minimize anxiety and concern of the accused; and (3) limit the possibility that the defense will be impaired.[33] Barker does not mention which party bears the burden of persuasion under this prong. Yet, in its analysis of the prejudice prong, the Court noted that Barker made no claim that any of his witnesses had died or otherwise had become unavailable owing to the delay, and *1245 concluded that there was an absence of serious prejudice under the fourth prong. And since the defendant is clearly in the best position to show prejudice under the “prejudice” prong, the burden remains with him, as this Court,[34] and even our learned colleague in the dissent,[35] have determined previously.
¶ 17. We now move forward and consider the three interests under the fourth prong: oppressive incarceration, anxiety or concern, and impairment of defense. Although Johnson’s pretrial incarceration was lengthy, incarceration alone does not constitute prejudice.[36] Mississippi caselaw does not recognize the negative emotional, social, and economic impacts that accompany incarceration as prejudice.[37] This Court will not indulge in an assumption, as does the dissent, that Johnson experienced anxiety and concern from his incarceration. And while the dissent disagrees with this Court’s decision to weigh this prong against Johnson, it remains evident that Johnson put forth absolutely no evidence that he has ever suffered symptoms of anxiety and concern as a result of his incarceration. In order for this prong to favor any defendant, evidence of legitimate anxiety and concern (medical records, documentation from the jail, etc.) must exist.[38]
¶ 18. Moreover, the possibility of impairment of the defense is the most serious consideration in determining whether the defendant has suffered prejudice as a result of the delay.[39] Generally, this Court will find prejudice where “there was a loss of evidence, the death of a witness, or the investigation became stale.”[40] None of these occurred here. Johnson failed to show how the delay prejudiced his defense in any way, nor does the record reveal any prejudice to Johnson or his defense. In fact, the State pointed out that Johnson was able to secure an alibi witness because of the delay,[41]and the record reveals that a fundamentally fair trial occurred despite the delay. At best, Johnson’s assertion of prejudice can be attributed solely to his incarceration, which, without more, is insufficient to warrant reversal.[42] Thus, this prong weighs in favor of the State.
*1246 ¶ 19. Under the dissent’s logic, the State must “prove a negative” and provide evidence of the absence of prejudice to Johnson’s defense. Thus, the State would have to pursue every possible avenue in search of potential lost witnesses and evidence, and question every possible person connected with Johnson and the alleged crime. This logic is tantamount to buying ocean-front property in Arizona; it can’t be done.
¶20. Additionally, we address the dissent’s comments regarding this Court’s “undue emphasis on the prejudice factor,” and its belief that the right to a speedy trial does not serve to prevent prejudice.[43] A close reading of Barker reveals that even the United States Supreme Court found that the absence of serious prejudice (coupled with the fact that the defendant did not want a speedy trial) outweighed the other two prongs; the length of delay (five years), and the reason for delay (the State failed to provide good reason for the delay).[44] So this Court’s emphasis on the prejudice prong is not as startling as the dissent claims. Further, it is well-established that the speedy-trial right is an important safeguard to prevent prejudice to the defendant and his defense, among other things, so this Court’s belief “that prejudice is what the constitutional right to a speedy trial was intended to prevent” is not so “mistaken.”[45]
¶ 21. Lastly, the dissent makes a bold claim that, “given the history and trend of speedy-trial motions in Mississippi ... viewed against the backdrop of our precedent ... the right to a speedy trial is simply no longer recognized in Mississippi.” While we greatly disagree with such an assertion, it should be noted that our learned colleague has had a hand in crafting the very “trend” at which he now balks.[46]
¶ 22. In conclusion, this Court has stated “that where the delay is neither intentional nor egregiously protracted, and there is an absence of actual prejudice to the defense, the balance is struck in favor of rejecting a speedy trial claim.” [47] After considering all of the relevant circumstances and factors, we affirm the Court of Appeals and the trial court.
II. Whether Johnson’s for-cause challenges should have been granted.
¶ 23. In his second assignment of error, Johnson contends that his constitutional right to an impartial jury was violated because he was forced to use two of his six peremptory challenges on two jurors who should have been excused for cause by the trial court. The Court of Appeals found that this issue lacked merit, because Johnson failed to show how he was prejudiced as a result of the trial court’s rulings, as the jurors ultimately were excluded. We agree.
¶ 24. The mere loss of a peremptory challenge is not enough to constitute a violation of the constitutional right *1247 to an impartial jury.[48] “So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the defendant was denied his constitutional rights.”[49] And this Court has expressed two prerequisites that a defendant must show before a claim related to the denial of a challenge for cause may be made: (1) the defendant must have exhausted all of his peremptory challenges; and (2) an incompetent juror must be forced by the trial court’s erroneous ruling to sit on the jury.[50]
¶ 25. Even though Johnson used all of his peremptory challenges, he fails to meet the second prerequisite. The two jurors in question did not sit on the jury. And Johnson does not argue, or much less show, that any of the jurors who sat on the jury were biased or incompetent. Therefore, we need not address whether the trial court erred in denying Johnson’s for-cause challenges. This issue is without merit.
CONCLUSION
¶ 26. Because none of Johnson’s constitutional rights were violated, we agree with the Court of Appeals and affirm the trial court.
¶ 27. CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.
CARLSON, P.J., AND RANDOLPH, J., CONCUR. LAMAR, J., CONCURS IN RESULT ONLY. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. WALLER C.J., JOINS THIS OPINION IN PART. KING, J., NOT PARTICIPATING.

. U.S. Const, amend. VI.

. Miss. Const, art. 3, § 26.

. Jenkins v. State, 947 So.2d 270, 276 (Miss. 2006); Manix v. State, 895 So.2d 167, 176 (Miss.2005) (citing Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)).

. Barker, 407 U.S. at 533, 92 S.Ct. 2182.

. Smith v. State, 550 So.2d 406, 408 (Miss.1989).

. Doggett v. U.S., 505 U.S. 647, 652, 112 S.Ct. 2686, 2691, 120 L.Ed.2d 520 (1992); Barker, 407 U.S. at 533, 92 S.Ct. 2182; Moffett v. State, 49 So.3d 1073, 1087-1088 (Miss.2010); Jenkins, 947 So.2d at 276-77; Manix, 895 So.2d at 176.

. Doggett, 505 U.S. at 652, 112 S.Ct. 2686.

. Jenkins, 947 So.2d at 276; Manix, 895 So.2d at 176 (citing Barker, 407 U.S. at 530, 92 S.Ct. 2182.)

. Jenkins, 947 So.2d at 276-77.

. Barker, 407 U.S. at 531, 92 S.Ct. 2182; State v. Magnusen, 646 So.2d 1275, 1282 (Miss.1994) (citing Adams v. State, 583 So.2d 165, 167 (Miss.1991) (citations omitted)).

. Ross, 605 So.2d 17, 24 (Miss.1992); Flores v. State, 574 So.2d 1314, 1321 (Miss.1990).

. Thomas v. State, 48 So.3d 460, 476 (Miss. 2010) (citing Jefferson v. State, 818 So.2d 1099, 1107-1108 (Miss.2002)); Brengettcy v. State, 794 So.2d 987, 994 (Miss.2001); Jaco v. State, 574 So.2d 625, 632 (Miss.1990).

. State v. Ferguson, 576 So.2d 1252, 1255 (Miss.1991).

. Prince v. Alabama, 507 F.2d 693 (5th Cir.1975).

. Id.

. Id. at 706-707.

. Manix, 895 So.2d at 177 (citing Magnusen, 646 So.2d at 1284); see also Moffett v. State, 49 So.3d at 1087-1088; Jenkins, 947 So.2d at 276; Stark v. State, 911 So.2d 447, 453 (Miss.2005); Hersick v. State, 904 So.2d 116, 124 (Miss.2004); Sharp v. State, 786 So.2d 372, 381 (Miss.2001).

. See Smith v. State, 550 So.2d 406, 409 (Miss.1989); Hughey v. State, 512 So.2d 4, 8 (Miss.1987); Beavers v. State, 498 So.2d 788, 791-92 (Miss.1986).

. See Moffett, 49 So.3d at 1087-1088; Jenkins, 947 So.2d at 276 (Miss.2006); Manix, 895 So.2d at 176; Price v. State, 898 So.2d 641, 649-650 (Miss.2005); Stark, 911 So.2d at 453; Hersick, 904 So.2d at 124; Sharp, 786 So.2d at 381; Stogner v. State, 627 So.2d 815, 819 (Miss.1993).

. Moffett, 49 So.3d at 1086-1087.

.Id.

. Jenkins, 947 So.2d at 276.

. Id. at 277.

. Manix, 895 So.2d at 172.

. Id. at 176.

. Sharp, 786 So.2d at 380 (citing Skaggs v. State, 676 So.2d 897, 900 (Miss.1996)).

. Id. at 381.

. Moore v. Arizona, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183, 185 (1973).

. Id. at 26-27, 94 S.Ct. at 190 (“Moreover, prejudice to the defendant caused by delay ... is not confined to the possible prejudice to his defense.... Inordinate delay ... may seriously interfere with the defendant’s liberty....”).

. Moore, 414 U.S. at 26, 94 S.Ct. at 189.

. See Id.

. Polk v. State, 612 So.2d 381, 387 (Miss.1992), overruled on other grounds by Miss. Transp. Comm'n v. McLemore, 863 So.2d 31, 39 (Miss.2003) ("[wjithout a showing of prejudice, this prong of the balancing test cannot weigh in favor of the defendant.”).

. Jenkins, 947 So.2d at 277 (citing Mitchell v. State, 792 So.2d 192, 213 (Miss.2001)); Barker, 407 U.S. at 531, 92 S.Ct. 2182.

. See Moffett, 49 So.3d at 1087-1088 ("We find that Moffett failed to meet his burden of showing actual prejudice. Even if we were to indulge in an assumption of prejudice, Moffett failed to show intentional device on the part of the State in delaying the trial.”); Stogner v. State, 627 So.2d 815, 819 (Miss.1993) ("Stogner failed to prove that he was prejudiced.”); see also Jenkins, 947 So.2d at 276; Manix, 895 So.2d at 176; Sharp, 786 So.2d at 381.

. Hersick v. State, 904 So.2d 116, 124 (Miss.2004) (in this opinion, authored by Presiding Justice Dickinson, the Court stated "[B]e-cause of Hersick's failure to demonstrate that he was ‘oppressed,’ that he suffered anxiety and concern (other than concern regarding sitting in jail), or that his defense was impaired by the delay, this factor favors the State.”) (emphasis added); Stark, 911 So.2d at 453 (in an opinion also authored by Presiding Justice Dickinson, the Court noted that "Stark fails to suggest any evidence, potential witness, or case theory which escaped his reach because of the delay.") (emphasis added).

. Jenkins, 947 So.2d at 278.

. Id. at 277 (citing Manix, 895 So.2d at 177 (citation omitted)) (In Manix, the Court cited, and thereby adopted with a vote of 8-0, the language found in the Hughey dissent regarding not recognizing “negative, emotional, social and economic impacts” as prejudice.) See Hughey, 512 So.2d at 11.

. See Magnusen, 646 So.2d at 1285.

. Id. (citing Sharp, 786 So.2d at 381).

. Magnusen, 646 So.2d at 1285; Manix, 895 So.2d at 177; Sharp, 786 So.2d at 381.

. Johnson did not call this witness at trial.

. Jenkins, 947 So.2d at 277 (citing Ross v. State, 605 So.2d 17, 23 (Miss.1992)); Hersick, *1246 904 So.2d at 124; Williamson v. State, 512 So.2d 868, 877 (Miss.1987).

. Diss. Op. at ¶ 71.

. Barker, 407 U.S. at 534, 92 S.Ct. at 2194.

. See United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966).

. See Moffett, 49 So.3d 1073; Williams v. State, 53 So.3d 734 (Miss.2010); Scott v. State, 8 So.3d 855 (Miss.2008); Jenkins, 947 So.2d 270; Manix, 895 So.2d 167; Price v. State, 898 So.2d 641 (Miss.2005); Stark, 911 So.2d 447; Hersick, 904 So.2d 116.

. Stevens, 808 So.2d at 918 (citing Duplantis v. State, 708 So.2d 1327, 1336 (Miss.1998)); Perry v. State, 637 So.2d 871, 876 (Miss.1994).

. Mettetal v. State, 615 So.2d 600, 603 (Miss.1993).

. Id. (citing Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80, 90 (1988)).

. Christmas v. State, 10 So.3d 413, 423 (Miss.2009) (citing Mettetal, 615 So.2d at 603).