RANDOLPH, Presiding Justice,
for the Court:
¶ 1. Willie Manning is appealing the trial court’s order denying him post-conviction relief. This appeal stems from Manning’s conviction of brutally murdering two elderly women in Starkville, Mississippi. The only witness to testify that he saw Manning entering the women’s apartment shortly before their bodies were discovered was Kevin Lucious, a convict serving two life sentences without parole in Missouri. No witness testified to seeing Manning leave the apartment. A more com- *304 píete statement of the underlying facts can be found in Manning’s failed direct appeal, Manning v. State, 735 So.2d 823 (Miss.1999). Considerable evidence was presented to the jury, which found Manning guilty, and Manning was sentenced to death. This Court affirmed Manning’s convictions and sentences.
¶ 2. Manning filed a petition for post-conviction relief (PCR). This Court granted Manning leave to proceed with post-conviction proceedings on three grounds: withheld evidence, Kevin Lucious’s testimony, and ineffective assistance of counsel related to those two claims. Manning v. State, 884 So.2d 717 (Miss.2004). The trial court denied Manning relief, and Manning appeals from that order.

ISSUES

¶ 3. On appeal from the trial court’s denial of post-conviction relief, Manning raises the following issues:
I. The State violated Manning’s due process rights by failing to provide favorable, material evidence, the cumulative effect of which puts the case in a different light and undermines confidence in the verdict.
II. The State violated Manning’s due process rights through its knowing use of false testimony.
III. Manning was denied his right to the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments and the Mississippi Constitution.
IV. Manning is entitled to post-conviction relief due to the cumulative effect of these errors.
V. Manning was denied his right to due process of law guaranteed by the Federal and State Constitutions due to the failure to allow him to inspect law enforcement files or admit portions of the files into evidence.

STANDARD OF REVIEW

¶ 4. “When reviewing a lower court’s decision to deny a petition for post conviction relief, this Court will not disturb the trial court’s factual findings unless they are found to be clearly erroneous.” Doss v. State, 19 So.3d 690, 694 (Miss.2009) (citing Brown v. State, 731 So.2d 595, 598 (Miss.1999)). This Court “must examine the entire record and accept ‘that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court’s findings of fact....’” Doss, 19 So.3d at 694 (quoting Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss.1987)). However, “ ‘where questions of law are raised the applicable standard of review is de novo.’ ” Doss, 19 So.3d at 694 (quoting Brown, 731 So.2d at 598). “The burden of proof at an evidentiary hearing on a PCR case is on the petitioner to show ‘by a preponderance of the evidence’ that he is entitled to relief.” Doss, 19 So.3d at 694 (quoting Miss.Code Ann. § 99-39-23(7) (Rev. 2007)).

ANALYSIS

¶ 5. We agree with the trial court’s decision to reject Lucious’s recanted testimony and Likeesha Jones’s testimony, finding no abuse of discretion. A trial judge is responsible for reviewing and evaluating the testimony of the witnesses, and this Court “will not overturn a decision to grant or deny a motion for new trial based on recanted testimony unless the circuit judge abused his discretion.” Russell v. State, 849 So.2d 95, 107 (Miss.2003). We also agree with the trial court on the ineffective-assistance-of-counsel claim, but for a different reason. Man *305 ning’s counsel should not be deemed ineffective, as their preparation and presentation was hamstrung from the beginning due to undisclosed favorable, material evidence.
¶ 6. This leads us to Manning’s claim that the State violated his due-process rights when it failed to provide favorable, material evidence, upon request. A canvass of all residents of Brooksville Gardens Apartments was initiated and conducted by the Starkville Police Department during its investigation. Index cards recording the results of the canvass were completed and maintained by the Stark-ville Police Department. An entry on the cards reveals that the apartment from which Lucious testified he observed Manning enter the victims’ apartment was vacant at the time of the crime, and neither Lucious nor his girlfriend Jones was listed as a resident of any of the apartments canvassed.[1]
¶ 7. “[J]ustice is more nearly achieved when ... each side has reasonable access to the evidence of the other.” Box v. State, 437 So.2d 19, 21 (1983). Brady v. Maryland instructs “that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). “The principle [ ] is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair[.]” Brady, 373 U.S. at 87, 83 S.Ct. at 1197 (citing Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935)).
? 8. Our Court and numerous other courts have adopted the following four-prong test:
To establish a Brady violation a defendant must prove the following: (1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
King v. State, 656 So.2d 1168, 1174 (Miss.1995) (citing U.S. v. Spagnoulo, 960 F.2d 990, 994 (11th Cir.1992)).
¶ 9. As to prong one, the State acknowledges that the Starkville Police Department had the canvass cards in its possession. UneontrAverted testimony was adduced at the hearing that (1) the cards were not provided to the district attorney’s office and (2) the cards were not otherwise provided to defense counsel. We conclude the evidence was favorable to Manning for impeachment of Lucious’s testimony. Prong one is satisfied.
¶ 10. As to prong two, Manning’s primary attorney testified that the canvass cards were not in the file provided prior to trial. The investigation of the January 18, 1993, crime commenced that day, with a complete canvass of the apartment complex ordered within days. Initially, Manning was not implicated as a suspect and was not indicted until more than a year later. Manning’s attorneys were not ap *306 pointed until May and August 1994. The trial took place in 1996, three-and-a-half years after the crime. The likelihood that Manning’s court-appointed attorneys could have diligently secured the same information by conducting a canvass of the apartment complex in the years after the crime defies computation of even a minimal degree of success. Thus, prong two is satisfied. King v. State, 656 So.2d at 1174.
¶ 11. As to prong three, the United States Supreme Court has stated that, under a Brady analysis, “suppression” does not encompass a determination of “moral culpability” or “willfulness.” Spagnoulo, 960 F.2d at 994-995 (quoting U.S. v. Agurs, 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976)). The focus is on the “character of the evidence,” not on the “character of the prosecutor.” Spagnoulo, 960 F.2d at 995 (quoting Agurs, 427 U.S. at 110, 96 S.Ct. at 2400). Suppression can be attributable to a state actor who withholds material evidence. Spagnoulo, 960 F.2d at 994 (quoting U.S. v. Antone, 603 F.2d 566, 569 (5th Cir. 1979)) (“[T]his court has declined to draw a distinction between different agencies under the same government, focusing instead upon the ‘prosecution team’ which includes both investigative and prosecutorial personnel”) (emphasis added) (also quoted by King v. State, 656 So.2d at 1176).[2]
¶ 12. The Police Chief of Stark-ville, who at the time of the crime was the captain in charge of investigations and a lead officer in this case, testified at the PCR hearing that he ordered the canvass of the apartment complex. The canvass cards were all present in the Starkville Police Department file. The district attorney testified that he never saw the canvass cards and that he would have investigated the discrepancy had he possessed the information. The record supports that neither the district attorney’s office nor the defense attorneys were aware of the evidence. The reasons why the information was not disclosed is immaterial. However, because there was suppression of material evidence by a state actor, prong three is satisfied. Spagnoulo, 960 F.2d at 995 (quoting Agurs, 427 U.S. at 110, 96 S.Ct. at 2400).
¶ 13. “[T]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” Spagnoulo, 960 F.2d at 994 (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)). Evidence “favorable .to an accused” includes both impeachment evidence and exculpatory evidence. Spagnoulo, 960 F.2d at 994 (citing Bagley, 473 U.S. at 676, 105 S.Ct. at 3380). Both the defense attorneys and the district attorney testified that their actions in preparing for the case and presenting the case would have been different had they possessed the evidence. The defense attorneys testified that the receipt of this favorable, material evidence would have altered their defense. There is no question that defense counsel would have had the opportunity to meaningfully impeach Lucious’s testimony that he lived in the apartment at the time of the crime *307 and saw Manning enter the victims’ apartment. Any attorney worth his salt would salivate at impeaching the State’s key witness using evidence obtained by the Stark-ville Police Department. As stated supra, the district attorney’s testimony that he would have investigated the discrepancy between Lucious’s testimony and the cards is also crucial to prong four, bolstering that a reasonable probability exists that the outcome of the proceedings would have been different. Manning satisfies prong four. Spagnoulo, 960 F.2d at 994; 656 So.2d at 1174.

CONCLUSION

¶ 14. Accordingly, the State violated Manning’s due-process rights by failing to provide favorable, material evidence. We reverse the judgment of the Oktibbeha County Circuit Court denying Manning post-conviction relief, and we reverse Manning’s conviction and sentence and remand the case to the trial court for a new trial.
¶15.' REVERSED AND REMANDED.
WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS AND COLEMAN, JJ„ CONCUR. KING, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PIERCE, J.

. Other records, including a lease and affidavit testimony, were admitted into evidence at the post-conviction-relief hearing supporting that the apartment was vacant the day of the crime, January 18, 1993. The apartment was leased by Jones February 1, 1993.

. King may overstate who may be state actors, for the quoted language used is derived from a footnote in the special concurrence of Box, joined by only two justices. King, 656 So.2d at 1174-75 (quoting Box, 437 So.2d at 25 n. 4). For the purposes of Brady, the "prosecution” depends on the particular facts of a case. Unquestionably, it encompasses the primary investigative agency, the Stark-ville Police Department, the factual scenario found in today’s case.