# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-KM-00110-SCT

*JOSEPH EUBANKS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/10/2020 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| TRIAL COURT ATTORNEYS: | CARNELIA PETTIS FONDREN |
| | MERRILL K. NORDSTROM |
| | BENJAMIN F. CREEKMORE |
| | JULIE HOWELL ADDISON |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH EUBANKS (PRO SE) |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ASHLEY LAUREN SULSER |
| | WILLIAM M. MALLETTE |
| | JULIE HOWELL ADDISON |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 06/16/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1. Joseph Eubanks appeals his conviction of simple assault domestic violence. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On February 15, 2017, Shakeara Harris filed domestic violence charges against Eubanks. Harris alleged that Eubanks choked her, making it hard for her to breathe.

Eubanks was arrested and released on bond. Harris received treatment at Baptist Memorial Hospital in Oxford.

¶3. Eubanks was indicted for aggravated domestic violence in June 2017. He was later convicted of simple assault domestic violence in January 2020. Eubanks was sentenced to six months in the custody of the Mississippi Department of Corrections, with six months suspended and 364 days of unsupervised probation. He now appeals and argues (1) his right to a speedy trial was violated, (2) the trial court erred by overruling his objection to the nurse practitioner's testimony, (3) he received ineffective assistance of counsel, (4) the trial court erred by denying his motion for judgment notwithstanding the verdict, (5) the verdict is against the overwhelming weight of the evidence, (6) his due process rights were violated, and (7) the trial court erred by giving a simple assault domestic violence jury instruction.

## DISCUSSION

*I.    Whether Eubanks's right to a speedy trial was violated.*

¶4. The following is a timeline of applicable events:

February 15, 2017 - Arrest

June 5, 2017 - Indictment

July 5, 2017 - Arraignment (Defense Counsel Present)

September 12, 2017 - Trial Setting (Trial Set for October 17, 2017)

December 7, 2017 - Trial Setting (Trial Set for January 18, 2018)

January 4, 2018 - Substitution of Defense Counsel

February 23, 2018 - Trial Setting (Trial Set for April 26, 2018)

2

June 1, 2018 - Trial Setting (Trial Set for July 5, 2018)

June 20, 2018 - Motion for Discovery of Information Necessary to Receive a Fair Trial

June 26, 2018 - Entry of Appearance (New Defense Counsel)

June 28, 2018 - Substitution of Defense Counsel

August 6, 2018 - Trial Setting (Trial Set for October 22, 2018)

November 29, 2018 - Trial Setting (Trial Set for January 4, 2019)

March 1, 2019 - Trial Setting (Trial Set for April 4, 2019)

March 26, 2019 - Harris's Active Duty Military Orders (Active Duty Effective June 10, 2019)

May 30, 2019 - Trial Setting (Trial Set for July 11, 2019)

July 3, 2019 - Eubanks's Motion for Speedy Trial

July 15, 2019 - Eubanks's Motion to Dismiss for Lack of Speedy Trial

July 16, 2019 - Eubanks's Motion to Quash Indictment with Prejudice

August 28, 2019 - State's Request for Subpoenas

September 10, 2019 - Trial Setting (Trial Set for January 7, 2020)

September 13, 2019 - Trial Setting (Trial Set for October 14, 2019)

November 19, 2019 - State's Petition to Secure the Attendance of a Witness from Without the State of Mississippi

November 19, 2019 - Trial Setting (Trial Set for January 7, 2020)

December 18, 2019 - State's Request for Subpoenas

December 20, 2019 - State's Request for Subpoena

January 3, 2020 - State's Request for Subpoenas

January 7, 2020 - Trial

¶5.     "Review of a speedy trial claim encompasses the fact question of whether the trial delay rose from good cause." *DeLoach v. State*, 722 So. 2d 512, 516 (Miss. 1998). "Under this Court's standard of review, this Court will uphold a decision based on substantial, credible evidence." *Id.* (citing *Folk v. State*, 576 So. 2d 1243, 1247 (Miss. 1991)).

¶6.     "An analysis of [Eubanks]'s constitutional right to a speedy trial must be made apart from his statutory right." *Franklin v. State*, 136 So. 3d 1021, 1032 (Miss. 2014) (citing *Simmons v. State*, 678 So. 2d 683, 686 (Miss. 1996)).

### A.     *Constitutional Right to a Speedy Trial*

¶7.     "The Sixth Amendment to the United States Constitution affords an accused 'the right to a speedy and public trial . . . .'" *Ben v. State*, 95 So. 3d 1236, 1242 (Miss. 2012) (quoting U.S. Const. amend. VI). "That right is applicable to the states through the Due Process Clause of the Fourteenth Amendment." *Id.* (citing *Klopfer v. North Carolina*, 386 U.S. 213, 222-23, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967)). "Article 3, Section 26 of the Mississippi Constitution of 1890 likewise guarantees criminal defendants the right to 'a speedy and public trial . . . .'" *Id.* (quoting Miss. Const. art. 3, § 26).

¶8.     "[Eubanks]'s assertion of a violation of his constitutional right to a speedy trial must be evaluated in accordance with the analysis established by *Barker v. Wingo*[, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)]." *Franklin*, 136 So. 3d at 1032. "Four factors must be considered and weighed: (1) the length of delay, (2) the reason for delay, (3) whether the defendant timely asserted his right, and (4) whether the defendant was prejudiced by the

4

delay." *Id.* at 1032-33 (citing *Barker*, 407 U.S. at 530). "No one factor is dispositive of the question. Instead, the totality of the circumstances is considered." *Jefferson v. State*, 818 So. 2d 1099, 1106 (Miss. 2002) (citing *Barker*, 407 U.S. at 530).

### 1. The Length of Delay

¶9. "[Eubanks]'s right to a speedy trial attached at the moment of his arrest." *Franklin*, 136 So. 3d at 1033 (citing *Simmons*, 678 So. 2d at 686). "A delay of eight months or more triggers a presumption of prejudice that requires a full analysis under *Barker*." *Franklin*, 136 So. 3d at 1033 (citing *Johnson v. State*, 68 So. 3d 1239, 1242 (Miss. 2011)). Approximately thirty-five months passed between Eubanks's arrest and trial. As a result, "the delay is presumptively prejudicial, and the burden of persuasion must shift to the State to show good reason for the delay." *Id.* (citing *Johnson*, 68 So. 3d at 1242). But "when the delay is presumptively prejudicial, that does not mean that actual prejudice to the defendant exists. Rather, actual prejudice is determined at a different point in the *Barker* analysis." *Franklin*, 136 So. 3d at 1033 (internal quotation mark omitted) (citing *Johnson*, 68 So. 3d at 1242). This factor weighs in favor of Eubanks.

### 2. The Reasons for Delay

¶10. When analyzing the reasons for delay, we should consider that

> different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Murray v. State*, 967 So. 2d 1222, 1230 (Miss. 2007) (emphasis omitted) (quoting *Barker*, 407 U.S. at 531).

¶11.    There is no evidence of intentional delay by the State.  The record reflects that an overcrowded docket contributed to much of the delay.  While the State concedes that no cases were brought to trial during the period of delay, the State notes that "that [wa]s not because the State [had not] set trials and gotten to the brink of trying a case just to have a defendant plea on the eve of trial."  The State asserts that multiple cases were consistently set for trial throughout the terms of court and that it actively prepared for those trials, but the cases were ultimately resolved shortly before trial.  This delay should be weighed against the State, but only slightly.  *Id.* (quoting *Barker*, 407 U.S. at 531).  The seven-month delay caused by Harris's absence for military duty should not be weighed against the State, nor should any delay caused by Eubanks's multiple changes in counsel.

¶12.    This factor weighs in favor of Eubanks.

> 3.    *Whether Eubanks timely asserted his right.*

¶13.    "Although it is the State's duty to insure that the defendant receives a speedy trial, a defendant has some responsibility to assert this right."  *Taylor v. State*, 672 So. 2d 1246, 1261 (Miss. 1996) (citing *Wiley v. State*, 582 So. 2d 1008, 1012 (Miss. 1991)).  "This Court has held that this factor weighs against a defendant who waits a significant amount of time after arrest to demand a speedy trial."  *Bateman v. State*, 125 So. 3d 616, 630 (Miss. 2013); *see also Noe v. State*, 616 So. 2d 298, 301 (Miss. 1993) (defendant's failure to assert his right to a speedy trial "nearly an entire year following his arrest" weighed against him); *Wall v.*

6

*State*, 718 So. 2d 1107, 1113 (Miss. 1998) (defendant's assertion of his right to a speedy trial "merely two months before he received a trial" weighed against him).

¶14.    Eubanks filed a motion for a speedy trial on July 3, 2019.  In that motion, he asserted his right to a speedy trial.  But while Eubanks asserted his right, he did so untimely.  Indeed, Eubanks did not assert his right to a speedy trial until more than two years after he was arrested and indicted.  And Eubanks was tried within six months of his speedy-trial-right assertion.[1]  Because Eubanks waited a significant amount of time to assert his right to a speedy trial, this factor weighs against him.  *See Bateman*, 125 So. 3d at 630.

¶15.    The dissent asserts that "[p]unishing defendants for not immediately asserting their right to a speedy trial is contrary to *Barker* . . . ."  Diss. Op. ¶ 76.  But *Barker* "emphasize[d] that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."  *Barker*, 407 U.S. at 532.  While Eubanks asserted his right to a speedy trial, he did so more than two years after he was indicted, approximately six months before he was tried, and after Harris had received active duty military orders.  Despite the dissent's assertion, Eubanks is not being "[p]unish[ed] . . . for not *immediately* asserting [his] right to a speedy trial[.]" Diss. Op. ¶ 76 (emphasis added).  Instead, this factor simply weighs against Eubanks for "wait[ing] a *significant* amount of time" to assert that right.  *Bateman*, 125 So. 3d at 630 (emphasis added).

¶16.    The dissent further asserts that because Eubanks "assert[ed] [his] right later into the

---

[1] The transcript indicates that Eubanks verbally asserted his speedy trial rights through counsel in May 2019.  But even this was untimely because it was nearly two years after Eubanks was indicted.

7

delay," this factor "should weigh neutrally at worst." Diss. Op. ¶¶ 78, 79. In support, the dissent cites *Taylor v. State*, 162 So. 3d 780 (Miss. 2015). Diss. Op. ¶¶ 78, 79. In *Taylor*, the Court found that "because Taylor did eventually make a demand, and because the State and the trial court promptly responded, the factor [wa]s neutral." *Id.* at 786. But *Taylor* acknowledged that this Court "has weighed the instant factor against defendants who, although they eventually asserted the right, allowed a 'significant amount of time' to pass after arrest before demanding a speedy trial." *Id.* at 785 (quoting *Bateman*, 125 So. 3d at 630). In fact, the Court stated, "*[b]ased on the Court's precedent*, the instant factor *could be* weighed against Taylor because he failed to demand a speedy trial in a timely manner." *Id.* at 786 (emphasis added).

>    4.    *Whether the defendant was prejudiced by the delay.*

¶17.    "When analyzing the last *Barker* factor, this Court should consider the following three interests: (1) preventing oppressive incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Bailey v. State*, 78 So. 3d 308, 323 (Miss. 2012) (citing *Jenkins v. State*, 947 So. 2d 270, 277 (Miss. 2006)). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

¶18.    First, Eubanks was not incarcerated before trial so there was no oppressive pretrial incarceration. Second, regarding anxiety and concern, Eubanks asserts his life has been "greatly disrupted by arrest, the delay between arrest and trial, and the presence of unresolved criminal charges." But "it is undeniable that every defendant most likely experiences *some*

8

anxiety" as anxiety is "inevitably present." ***Franklin***, 136 So. 3d at 1034; ***Jasso v. State***, 655 So. 2d 30, 35 (Miss. 1995) (citing ***Jaco v. State***, 574 So. 2d 625, 632 (Miss. 1990)).  While Eubanks asserts that his military service was hindered by the delay due to the Lautenberg Amendment,[2] such amendment applies only to a conviction of domestic violence.  Jake Yu, *The Lautenberg Amendment and How It Affects the Servicemembers*, http://usacac.army.mil/sites/default/files/documents/sja/lautenberg.pdf (last visited May 17, 2022).  Thus, any prejudice related to the amendment would come from Eubanks's conviction, not any delay of trial.  Third, Eubanks fails to show that the delay impaired his defense.  Indeed, there is no evidence of the death of a witness or the unavailability of a witness as the result of the delay, nor is there any indication of a loss of evidence due to the delay.

¶19.    The dissent asserts prejudice related to the "dimming memories" and the "fractured . . . location of the witnesses."  Diss. Op. ¶ 84 (citing ***Doggett v. United States***, 505 U.S. 647, 648, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992)).  But as later discussed in more detail, neither the witnesses' "dimming memories" nor their location impaired Eubanks's defense.

¶20.    None of the three interests of concern under the fourth factor weigh heavily in Eubanks's favor to the extent that he has presented a colorable claim of prejudice.  No

---

[2] Under the Lautenberg Amendment, "it is a felony for anyone convicted of a misdemeanor crime of domestic violence . . . to ship, transport, possess, or receive firearms or ammunition."  Jake Yu, *The Lautenberg Amendment and How It Affects the Servicemembers*, http://usacac.army.mil/sites/default/files/documents/sja/lautenberg.pdf (last visited May 17, 2022).  "There is no exception for military personnel engaged in official duties." *Id.*  Thus, a "misdemeanor conviction for domestic violence . . . may affect your military career." *Id.*

oppressive pretrial incarceration occurred here. And although Eubanks asserts anxiety and concern as a result of the delay in trial, he fails to show how he was hindered in preparing his defense. Thus, this factor favors the State.

¶21.  A *Barker* analysis shows that while the first two factors weigh in Eubanks's favor, the remaining two factors do not. Clearly, the length of delay between arrest and trial—almost three years—was "extraordinary," and "a good part of that [delay] was attributable to the [State]'s failure or inability to try [Eubanks] . . . ." *Barker*, 407 U.S. at 533-34. But Eubanks waited a significant amount of time to assert his right to a speedy trial. And "prejudice was minimal." *Id.* at 534. "Of course, [Eubanks] was prejudiced to some extent by living for [almost three] years under a cloud of suspicion and anxiety. . . . But there is no claim that any of [Eubank]'s witnesses died or otherwise became unavailable owing to the delay."[3] *Id.*

¶22.  Considering the totality of the circumstances, we do not find that Eubanks was denied his constitutional right to a speedy trial. *See Jefferson*, 818 So. 2d at 1106 (citing *Barker*, 407 U.S. at 530).

B.    *Statutory Right to a Speedy Trial*

¶23.  Mississippi Code Section 99-17-1 (Rev. 2020) ensures the right to a speedy trial. Under Section 99-17-1, "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later

---

[3] In *Barker*, the Court found an "absence of serious prejudice" and that Barker's right to a speedy trial was not violated despite pretrial incarceration and a delay of "well over five years." *Barker*, 407 U.S. at 533-34, 536.

than two hundred seventy (270) days after the accused has been arraigned."

¶24. We have stated that "for a statutory speedy-trial violation to stand, the defendant must show that he was tried more than 270 days after his arraignment and demonstrate that the delay caused prejudice." *Franklin*, 136 So. 3d at 1037 (citing *McBride v. State*, 61 So. 3d 138, 147 (Miss. 2011)).

¶25. The record reflects that Eubanks was tried more than 270 days after his arraignment. But Eubanks fails to demonstrate that the delay caused prejudice. As previously discussed, Eubanks experienced no oppressive pretrial incarceration. While Eubanks asserted anxiety and concern over the delay, he failed to show that the delay hindered the preparation of his defense. Consequently, Eubanks's statutory speedy-trial right was not violated.

¶26. Because neither Eubanks's constitutional nor his statutory right to a speedy trial was violated, the trial court did not err by denying his motion to dismiss. The trial court's decision to deny Eubanks's motion was "based on substantial, credible evidence." *DeLoach*, 722 So. 2d at 516 (citing *Folk*, 576 So. 2d at 1247).

> II. *Whether the trial court erred by overruling defense counsel's objection to Emily Young's testimony during which she stated legal conclusions beyond her specialized knowledge.*

¶27. Emily Young is a nurse practitioner who was working at Baptist Memorial Hospital in Oxford at the time Harris was admitted, and she was involved in Harris's medical treatment. Young testified about Harris's injuries and what she observed while treating Harris. Young opined that Harris's injuries were consistent with choking. Defense counsel did not object to Young's opinion testimony. Defense counsel cross-examined Young.

11

¶28. During redirect, the State showed Young some photographs of Harris taken by law enforcement and intended to ask if the injuries depicted in the photographs were consistent with someone applying pressure to the neck. Defense counsel objected, arguing the testimony was outside the scope of redirect. The jury was removed from the courtroom. The trial judge noted that the photographs had already been admitted into evidence, and he stated that he would allow defense counsel limited cross-examination as to the photographs.

¶29. Defense counsel then stated, "Also, Your Honor, I don't think we have agreed that [Young] is an expert yet." The trial judge responded, "Well why did you let her testify in the form of an opinion if you don't agree that she is an expert? It was done without objection." Defense counsel explained that she was not asking the trial court to strike Young's prior testimony, only to disallow any further testimony regarding the photographs. Specifically, defense counsel stated, "I'm asking the court to deny the State the right to ask her about the up coming testimony. Nothing that has happened to this point. . . . I don't want the [S]tate to have a second bite at the apple of opening this back up." The trial judge held, "The question about the photographs has been resolved and I have ruled on that and if [the State] ask[s] any more medical opinions then I guess [defense counsel] would be allowed to object contemporaneously and we can take it up then."

¶30. The jury returned to the courtroom. On redirect, the State asked only one question, "Mrs. Young, there are 8 pictures here and they are of Mrs. Harris before and after she was treated at the hospital. If you will look at those. Do they depict the victim as you saw her when she came for treatment at the hospital?" Young responded affirmatively. Defense

12

counsel did not object to the State's question and was given the opportunity to recross-examine Young. Defense counsel declined any recross-examination.

¶31. Eubanks argues the trial court erred by allowing Young to testify as an expert witness. He asserts that "neither [Young's] educational background nor her work experience would equate to a level of expertise in strangulation." But Young was never accepted or tendered as an expert witness in front of the jury. Moreover, defense counsel never objected to Young's opinion testimony during direct examination. It was only during redirect examination when the State attempted to question Young regarding certain photographs that defense counsel objected.

¶32. "In order to preserve an issue on appeal, counsel must object. The failure to object acts as a waiver." *Carr v. State*, 873 So. 2d 991, 1004 (Miss. 2004). Because defense counsel failed to object to Young's opinion testimony during direct examination, Eubanks has waived this issue on appeal. Notably, after defense counsel objected during redirect, no further opinion testimony was given.

       *III.*     *Whether Eubanks received ineffective assistance of counsel.*

¶33. Eubanks argues he received ineffective assistance of counsel. Every criminal defendant has a state and federal constitutional right to effective assistance of counsel. U.S. Const. amends. VI, XIV; Miss. Const. art. 3, § 26. To prove ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct 2052, 80 L. Ed. 2d 674 (1984). To show deficient performance, a defendant must show

that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. But a strong presumption exists that counsel's performance constituted trial strategy and was "within the wide range of reasonable professional assistance[.]" *Id.* at 689. Prejudice is demonstrated by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

¶34. Generally, "ineffective assistance claims are more appropriately brought during post-conviction proceedings." *Parker v. State*, 30 So. 3d 1222, 1232 (Miss. 2010) (internal quotation mark omitted) (quoting *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008)). "This is because on direct appeal the Court is limited to the trial court record in its review of the claim." *Id.* (internal quotation marks omitted) (quoting *Archer*, 986 So. 2d at 955). "Where the record lacks sufficient evidence to adequately address the claim, this Court should deny relief, preserving the defendant's right to argue the issue through a post-conviction-relief petition." *Id.* (citing *Archer*, 986 So. 2d at 955). "This Court may, however, address an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record." *Id.* (citing *Archer*, 986 So. 2d at 955; Miss. R. App. P. 22(b)). Since the facts and issues are apparent from the record, we will address the merits of Eubanks's claim of ineffective assistance of counsel.

¶35. Eubanks first argues his counsel was ineffective for her failure to object to Young's opinion testimony, i.e., that Harris's injuries were consistent with choking or strangulation. But despite defense counsel's failure to object, it appears that the jury discounted Young's testimony since the jury did not find Eubanks guilty of felony aggravated assault domestic

14

violence but instead the lesser-included offense of misdemeanor simple assault domestic violence. Even Eubanks admits that "[t]he jury decided that [he] did not strangle Harris as he was found not guilty of aggravated assault domestic violence." Thus, even if defense counsel's failure to object was deficient, the deficiency did not prejudice Eubanks's defense. *Strickland*, 466 U.S. at 687.

¶36. Eubanks also argues his counsel was ineffective for her failure "to subpoena the most significant witness in the case, Demetrius Plaxico." According to Eubanks, Plaxico, Eubanks's roomate, "was the only third party that was present on the night of the altercation" and "would have corroborated Eubanks'[s] version of events." But Eubanks provides no specific account of what Plaxico would have said that would be favorable to his defense. Moreover, "[w]ith respect to the overall performance of the attorney, 'counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy' and cannot give rise to an ineffective assistance of counsel claim." *Powell v. State*, 806 So. 2d 1069, 1077 (Miss. 2001) (quoting *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995)).

¶37. Eubanks fails to show that his trial counsel's performance was deficient and that the alleged deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687. As a result, his ineffective assistance of counsel claim fails.

    IV.     *Whether the trial court erred by denying Eubanks's motion for judgment of acquittal notwithstanding the verdict.*

¶38. Eubanks argues the trial court erred by denying his motion for judgment notwithstanding the verdict. He asserts "[t]he sufficiency of the evidence did not yield a

15

guilty verdict as . . . [n]o reasonable and fair-minded juror could have possibly found [him] guilty of simple domestic violence as the evidence does not grant such outcome." We disagree and find this issue is procedurally barred.

¶39. At the close of the State's case-in-chief, Eubanks moved for a directed verdict. That motion was denied. Eubanks then proceeded with his case. After Eubanks rested his case, the State called various rebuttal witnesses. Thereafter, the State finally rested its case. The record reflects that Eubanks did not renew his motion for a directed verdict, he did not request a peremptory instruction at the close of all the evidence, nor did he file a motion for a judgment notwithstanding the verdict.[4]

¶40. "In the absence of a renewal of the directed verdict, a request for a peremptory instruction, or a motion for a judgment notwithstanding the verdict, [Eubanks] has waived the sufficiency error on appeal." *Holland v. State*, 656 So. 2d 1192, 1197 (Miss. 1995) (citing *Griffin v. State*, 495 So. 2d 1352, 1353 (Miss. 1986)).

¶41. Notwithstanding the procedural bar, we find Eubanks's argument is meritless. "When reviewing a challenge for sufficiency of the evidence, this Court must determine whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Naylor v. State*, 248 So. 3d 793, 796 (Miss. 2018) (internal quotation marks omitted) (quoting *Ambrose v. State*, 133 So. 3d 786, 791 (Miss. 2013)). "The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the

---

[4] Although Eubanks asserts the trial court erroneously denied his motion for judgment notwithstanding the verdict, there is no indication in the record that a motion was ever filed.

16

evidence." *Id.* (internal quotation marks omitted) (quoting *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993)).

> [I]f a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient.

*Id.* (alteration in original) (quoting *Shelton v. State*, 214 So. 3d 250, 256 (Miss. 2017)).

¶42. Eubanks was convicted of the lesser-included offense of simple assault domestic violence under Mississippi Code Section 97-3-7(3)(a) (Rev. 2020). Under Section 97-3-7(3)(a),

> When the offense is committed against . . . a person who has a current or former dating relationship with the defendant, . . . a person is guilty of simple domestic violence who:
>
> > (i) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another;
> >
> > (ii) Negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or
> >
> > (iii) Attempts by physical menace to put another in fear of imminent serious bodily harm.

Miss. Code Ann. § 97-3-7(3)(a).

¶43. Harris testified at trial. Harris explained that she and Eubanks began communication via social media in January 2017. At the time, they were both members of the Army Reserve Officers' Training Corps (ROTC) at the University of Mississippi. Harris testified that she and Eubanks began a dating relationship, that they agreed to only see each other, and that

17

they were intimate. But on February 13, 2017, Harris learned that Eubanks was seeing other people. As a result, Harris did not "want to have anything to do with [Eubanks] as far as a relationship" but "wanted to keep [their] friendship because of ROTC."

¶44. On February 15, 2017, Harris went to Eubanks's apartment. According to Harris, Eubanks tried to kiss her. Harris told Eubanks that they were just friends, but Eubanks continued to try to kiss her. Harris testified that Eubanks "kept trying to kiss [her] and [she] was trying to push him off." Harris told Eubanks to leave her alone, that they were just friends, but "before [she] knew it[,] [Eubanks] was choking [her]." Harris explained that Eubanks pinned her down, that she could not move nor could she breathe, and that she was scared. Harris reported the incident to the Oxford Police Department. She also sought treatment at Baptist Memorial Hospital in Oxford.

¶45. In addition to Harris, numerous witnesses testified including two law enforcement officers and a treating nurse practitioner. Moreover, photographs were admitted into evidence that showed Harris's condition following the incident.

¶46. Eubanks also testified at trial. He denied ever leading Harris to believe that she was the only person he was seeing. Eubanks explained that on the night of the incident, he and Harris were hanging out at his apartment. When Eubanks mentioned that Harris probably needed to leave because she had a test the next day, Harris became angry and suggested that he wanted her to leave so that other girls could come over. According to Eubanks, Harris "took a swing at [him] and hit [him] in the right side of [his] face." Eubanks "attempted to . . . grab [Harris's] wrist to keep her from taking any more swings at [him]." He further

18

"attempted to grab [Harris's] other wrist while [he] tried to pin her head to [his] chest to prevent her from swinging." Eubanks testified that at no time did he choke Harris.

¶47. Eubanks asserts that "the jury relied on extremely weak evidence in rendering its jury verdict." He claims that Harris's testimony was "unreliable" and that she gave conflicting statements to law enforcement. But the record reflects that the jury heard testimony from both Harris and Eubanks regarding their different versions of events. The record further reflects that Eubanks's defense counsel cross-examined Harris regarding her statements to law enforcement.

¶48.    [W]hen the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony. This wise rule applies with equal force to the state's witnesses and the appellant's witnesses, including the appellant himself. We have repeatedly held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the state or on behalf of the accused. In other words, the credibility of witnesses is not for the reviewing court.

*Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980) (citing *Davis v. State*, 320 So. 2d 789 (Miss. 1975)).

¶49. Considering the evidence in the light most favorable to the State, we find sufficient evidence exists to support Eubanks's conviction of simple assault domestic violence.

> V.    *Whether the jury's finding that Harris suffered bodily harm was against the overwhelming weight of the evidence.*

¶50. Eubanks also asserts the jury's verdict was against the overwhelming weight of the evidence. We disagree and find this issue is procedurally barred.

¶51. The record reveals no motion for a new trial was filed. A "[m]otion for new trial must

be made where it is contended that the verdict of the jury is against the overwhelming weight of the evidence." *Jackson v. State*, 423 So. 2d 129, 132 (Miss. 1982) (citing *Gilmer v. Gunter*, 46 So. 2d 447 (Miss. 1950)). Because Eubanks failed to file a motion for new trial, this issue is procedurally barred.

¶52. Procedural bar notwithstanding, we find Eubanks's argument is without merit. "Our role as [an] appellate court is to review the trial court's decision to grant or deny a new trial for an abuse of discretion." *Little v. State*, 233 So. 3d 288, 292 (Miss. 2017). "In carrying out this task, we weigh the evidence in the light most favorable to the verdict, 'only disturb[ing] a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Id.* (alteration in original) (quoting *Lindsay v. State*, 212 So. 3d 44, 45 (Miss. 2017)).

¶53. Eubanks argues that "[t]he jury was influenced by an inadequate investigation and misleading testimonies which has prejudiced [him]." But as previously noted, the jury heard all evidence and testimony and was presented with both the State's and Eubanks's theory of the case. "The jury simply did not accept [Eubanks]'s account, and that was its decision to make[.]" *Williams v. State*, 64 So. 3d 1029, 1033 (Miss. Ct. App. 2011) (internal quotation marks omitted) (quoting *Nix v. State*, 8 So. 3d 141, 146 (Miss. 2009) ("The jury is the sole judge of the weight of the evidence and the credibility of the witnesses.")). "Conflicts in the evidence are for the jury to resolve." *Id.* (citing *Whittington v. State*, 377 So. 2d 927, 929 (Miss. 1979)).

¶54. In viewing the evidence in the light most favorable to the verdict, we find that a

20

reasonable juror could have found Eubanks guilty of simple assault domestic violence. Therefore, the verdict is not "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little*, 233 So. 3d at 292 (internal quotation mark omitted) (quoting *Lindsay*, 212 So. 3d at 45).

VI. *Whether the State violated Eubanks's due process rights by failing to investigate and preserve exculpatory evidence.*

¶55. Eubanks argues the State withheld a statement "given by [him] to the Oxford Police Department [and] violated [his] due process rights by disregarding its duty to preserve evidence that might be significant to [his] case." Specifically, Eubanks asserts he gave an "involuntary written statement . . . on March 17, 2017" and that "Shane Fortner [with the Oxford Police Department] signed the statement as a witness."

¶56. Eubanks's former defense counsel, TR Trout, testified that he accompanied Eubanks to the Oxford Police Department where Eubanks was interviewed by law enforcement. According to Trout, Sergeant Fortner conducted the interview with Eubanks, and Chief of Police Jeff McCutchen was also present. Based on his recollection, Trout "believe[d]" the interview was recorded, but Trout "never saw a copy of it." Trout acknowledged that it was unlike him not to obtain a copy of a recorded statement.

¶57. Sergeant Fortner and Chief McCutchen also testified. Neither Sergeant Fortner nor Chief McCutchen recalled participating in a recorded interview with Eubanks. Sergeant Fortner testified that had a recorded interview occurred, he would have included the audio or video in the case file. Chief McCutchen explained that the interview would have been "before video recording so it would have either been on an audio format or [Eubanks] would

21

have [been] given . . . an opportunity to write a written statement that would have been submitted as evidence in court."

¶58.    In support of his claim, Eubanks relies on *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  In *Brady*, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.  This Court as well as others have adopted the following four-part test:

> To establish a *Brady* violation a defendant must prove the following: (1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*Manning v. State*, 158 So. 3d 302, 305 (Miss. 2015) (quoting *King v. State*, 656 So. 2d 1168, 1174 (Miss. 1995)).

¶59.    Eubanks fails to meet his burden under this four-part test.  First, there is nothing to suggest that the State possessed and suppressed evidence favorable to Eubanks. *Id.* at 305 (quoting *King*, 656 So. 2d at 1174).  Again, neither Sergeant Fortner not Chief McCutchen recall a recorded interview with Eubanks.  Although Trout recalls that a statement was provided, he does not recall the substance of that statement, and he did not obtain a copy of the statement.  Additionally, it appears that Eubanks has possession of the evidence. *Id.* at 305 (quoting *King*, 656 So. 2d at 1174).  Indeed, at trial, Eubanks testified that he provided

22

a "written version of what happened" to Sergeant Fortner, that he brought the written statement with him to trial, and that the written statement was "over there" with defense counsel. Moreover, there is no indication that "had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." *Id.* at 305 (quoting *King*, 656 So. 2d at 1174). Eubanks testified at trial in his own defense. Thus, Eubanks was able to tell the jury his side of the story. In other words, Eubanks was given the opportunity to tell the jury what was included in his written statement to law enforcement.

¶60. Eubanks fails to establish a *Brady* violation. Eubanks's due process rights were not violated. *Brady*, 373 U.S. at 87.

> VII. *Whether the trial court erred by giving the State's simple assault domestic violence jury instruction.*

¶61. Eubanks last argues that the trial court erred by giving Jury Instruction S-4, a lesser-included offense instruction on simple assault domestic violence. Jury instructions are "within the discretion of the trial court[,] and the settled standard of review is abuse of discretion." *Nelson v. State*, 284 So. 3d 711, 716 (Miss. 2019) (internal quotation mark omitted) (quoting *Bailey v. State*, 78 So. 3d 308, 315 (Miss. 2012)). "[T]he instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Newell v. State*, 49 So. 3d 66, 73 (Miss. 2010) (quoting *Rubenstein v. State*, 941 So. 2d 735, 785 (Miss. 2006)).

¶62. "[A] lesser-included offense is one in which all the essential ingredients are contained

23

in the offense for which the accused is indicted. . . ." ***Downs v. State***, 962 So. 2d 1255,1261

(Miss. 2007) (alterations in original) (internal quotation marks omitted) (quoting ***Porter v.***

***State***, 616 So. 2d 899, 909-10 (Miss. 1993)).  "A lesser-included offense instruction is

warranted where the jury could find, from the evidence presented, the defendant not guilty

of the crime with which he was charged, yet guilty of the lesser-included offense."  ***Id.***

(internal quotation marks omitted) (quoting ***Green v. State***, 631 So. 2d 167, 173 (Miss.

1994)).

¶63.    Here, simple assault domestic violence is a lesser-included offense of aggravated

assault domestic violence. *See* ***Williams v. State***, 119 So. 3d 404, 407 (Miss. Ct. App. 2013).

Eubanks asserts that based on the evidence presented, a simple assault domestic violence

instruction was not warranted.  In support, Eubanks relies on ***Griffin v. State***, 533 So. 2d 444

(Miss. 1998).  But Eubanks's reliance on ***Griffin*** is misplaced.

¶64.    ***Griffin*** involved a "lesser offense" instruction, not a lesser-included offense

instruction.  ***Id.*** at 447.  The Court found that the defendant, indicted for rape, "was . . .

entitled to have the jury instructed on the *lesser offense* of simple assault."  ***Id.*** at 447-48

(emphasis added).  ***Griffin***'s "journey into non-included offense instructions" was overruled

in 2015 by ***Hye v. State***, 162 So. 3d 750, 755 (Miss. 2015).  In ***Hye***, the Court held that

"***Griffin*** and progeny authorizing lesser-nonincluded-offense instructions are hereby

overruled."  ***Id.*** at 764.

¶65.    Here, the evidence supports a lesser-included offense instruction of simple assault

domestic violence.  The jury, in weighing the evidence presented, could have found that

24

Eubanks's actions fell short of strangulation but did cause Harris bodily harm. *Downs*, 969 So. 2d at 1261; Miss. Code Ann. § 97-3-7(3)(a). Such determination was for the jury. Harris's testimony, along with the testimony from law enforcement, as well as the photographs admitted into evidence, support a finding consistent with the verdict. Thus, the trial court did not abuse its discretion by giving the simple assault domestic violence instruction.

## CONCLUSION

¶66. Eubanks's conviction of simple assault domestic violence is affirmed.

¶67. **AFFIRMED.**

**RANDOLPH, C.J., MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, P.JJ., AND ISHEE, J.**

**COLEMAN, JUSTICE, DISSENTING:**

¶68. Because Eubanks's Sixth Amendment right to a speedy trial was violated, I respectfully dissent.

¶69. When addressing an individual's claimed violation of their constitutional right to a speedy trial, we must weigh the four factors set forth by the United Stated Supreme Court in *Barker v. Wingo*: (1) the length of delay, (2) the reason for that delay, (3) whether the defendant asserted their right to a speedy trial, and (4) whether the defendant was prejudiced by the delay. *Barker v. Wingo*, 407 U.S. 514, 531-32 (1972). The factors are to be considered along with other circumstances; none of them by themselves are sufficient to tip the scale one way or the other. *Id.* at 533. Additionally, the United States Supreme Court has

noted that a delay of more than one year is generally presumptively prejudicial. ***Doggett v. United States***, 505 U.S. 647, 652 n.1 (1992). Further, Section 99-17-1 of the Mississippi Code requires a criminal defendant's trial to be held within 270 days of arraignment unless good cause is shown. Miss. Code Ann. 99-17-1 (Rev. 2020). Under Mississippi law, a delay of eight months is presumptively prejudicial and triggers examination of the other three ***Barker*** factors. ***Smith v. State***, 550 So. 2d 406, 408 (Miss. 1989).

## I. Length of the Delay

¶70. The Sixth Amendment right to a speedy trial attaches, and the speedy trial clock begins to run when the accused is indicted or arrested. ***Smith***, 550 So. 2d at 408. Eubanks was arrested on February 15, 2017; he waived his arraignment and entered his plea on July 6, 2017. Eubanks's trial began on January 7, 2020. One thousand fifty-seven days elapsed between his arrest and trial, and 915 days elapsed between his waiver of arraignment and trial. Both of the time periods far exceed the threshold required for presumptive prejudice of eight months by ***Smith*** and one year by ***Doggett***. The length of delay is presumptively prejudicial and is weighed in favor of the defendant in the ***Barker*** analysis. ***Manix v. State***, 895 So. 2d 167, 176 (Miss. 2005).

## II. The Reason for the Delay

¶71. Since prejudice is presumed in the instant case by the length of the delay, the State has the burden of showing it had good reason for the delay in bringing the defendant to trial. ***Franklin v. State***, 136 So. 3d 1021, 1033 (Miss. 2014). It does not appear that the State put much effort in bringing Eubanks to trial. He points out, and the State concedes, that no other

26

cases were brought to trial during the period of delay at issue here. Eubanks's trial was originally set for October 17, 2017. However, the trial was reset ten more times, *all at the request of the State*, before the date of January 7, 2020, was settled. Eubanks never asked for any continuances.

¶72. The State fails to offer explanations for the delay. The first reason given is a crowded docket. The State claims that Lafayette County's Circuit Court docket will have on average, between 300 and 475 indicted cases. The State does not list specific numbers for the time period at issue here. An overcrowded docket is not weighed as heavily against the State as deliberate delay but is weighed against the State nonetheless. ***Barker***, 407 U.S. at 531. However, the State's claim that an overcrowded docket prevented it from bringing Eubanks to trial is problematic, considering it tried no other cases during the relevant time. The majority gives the State too much credit regarding its argument that cases were being set and resolved without trial. Maj. Op. ¶ 11. The State makes only a vague, general statement about pending trials being set and resolved in favor of plea agreements. It offers no proof or examples of any such cases during the nearly three years Eubanks was awaiting trial.

¶73. Next, the State claims that the change in public defenders and other counsel was a reason for the delay. However, no evidence supports that the change in counsel hampered the State's preparation in bringing Eubanks to trial. The final change in attorneys came on June 26, 2018, not quite a year and a half after Eubanks's speedy trial clock began to run. It took the State another year and a half to bring Eubanks to trial. In fact, a large portion of the State's argument as to why the length of delay should not be weighed against it is that

27

Eubanks did not assert his right to a speedy trial until after his final substitution of counsel in 2019. A defendant has absolutely no duty to bring himself to trial. That responsibility rests squarely on the shoulders of the State. *Id.* at 527. Further, Eubanks was at no point during the delay unavailable to be tried. When viewed in light of the total length of time it took the State to try Eubanks, any change in attorneys should not weigh against him. *Id.* at 531.

¶74. Another reason given by the State for the delay is the continuance attributed to Harris's being on active military duty outside Mississippi. Harris was on active duty orders with the United States Army immediately prior to the trial. However, Harris was apparently in Oxford attending Ole Miss until the summer of 2019, making her available as a witness. Harris's attendance at the university for two more years after the incident afforded the State more than ample time to try Eubanks's case.

¶75. The majority of the delay period cannot be attributed to Eubanks. The reasons for the lion's share of the delay was not just an overcrowded docket, but rather apathy on the State's behalf. The State held no trials in the nearly three year period at issue and fails to explain why. The reason for the delay factor weighs in favor of Eubanks more heavily than would a delay stemming solely from an overcrowded docket.

### III. Defendant's Assertion of the Right to a Speedy Trial

¶76. Eubanks did assert his right to a speedy trial. However, he did so later into the period of delay. His speedy trial motions were filed on July 3 and July 15, 2019. He also verbally asserted his right to speedy trial through counsel in May 2019. Even giving him the benefit

28

of the doubt based on an oral assertion, the assertion came nearly two years after the indictment and more than two years after the arrest. The Mississippi Supreme Court has held that waiting a significant period of time from the arrest or indictment to assert the right to a speedy trial will weigh against a defendant. *Bateman v. State*, 125 So. 3d 616, 630 (Miss. 2013) (citing *Noe v. State*, 616 So. 2d 298, 301 (Miss. 1993)). The *Bateman* Court cited *Noe* and claimed that the *Noe* Court had held that a failure to assert the right to a speedy trial more than a year after his arrest weighed heavily against the defendant. *Bateman*, 125 So. 3d at 630. However, that is simply not true. In fact, the word "heavily" is not used in *Noe*; is it not presupposed that the assertion of right factor is weighed against a defendant to a higher degree. *Noe*, 616 So. 2d at 301. Punishing defendants for not immediately asserting their right to a speedy trial is contrary to *Barker*, which places the primary burden of bringing a defendant to trial on courts and prosecutors. *Barker*, 407 U.S. at 529.

¶77.    Some Mississippi Supreme Court case law regarding a defendant's assertion of their Sixth Amendment right to a speedy trial is indeed a departure from the United States Supreme Court's opinion in *Barker*. *Barker*'s discussion of the assertion of right factor does not lend itself to the interpretation that a defendant who asserts his right at some point before trial, even later into the period of delay, should have the assertion of right factor weighed *against* them. *Barker* states:

> The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Barker*, 407 U.S. at 531–32. *Barker* only makes note of the fact that a defendant who does

29

not assert their right will have a hard time proving that their Sixth Amendment right to a speedy trial was violated. *Id.* Indeed, within the same paragraph, *Barker* states that "the more serious the deprivation [of his Sixth Amendment right], the more likely a defendant is to complain." *Id.* at 531. Logic follows that a defendant is more likely to assert their right as the delay grows longer. Such is the case here.

¶78. However, we have also held that even when a defendant asserts their right later into the delay, the factor will at worst weight neutrally. *Taylor v. State*, 162 So. 3d 780, 786 (Miss. 2015). *Taylor* was similar to Eubanks's case. In *Taylor*, the defendant asserted his Sixth Amendment right approximately fifteen months after his arrest and one year after he was indicted; his trial was held three-and-a-half months after he made the demand. *Id.* at 785.

¶79. Accordingly, based on *Taylor*, the assertion of right factor in Eubanks's case should weigh neutrally at worst.

### IV. Prejudice to the Defendant

¶80. The last *Barker* factor assesses whether the defendant has been prejudiced by the delay. *Barker*, 407 U.S. at 532. According to *Barker*, prejudice should be assessed in the light of the interests the speedy trial right was designed to protect. *Id.* The United States Supreme Court has identified three such interests: first, to prevent oppressive pretrial incarceration; second, to minimize anxiety and concern of the accused; and third, to limit the possibility that the defense will be impaired. *Id.* Of the three, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the

30

entire system. *Id.* Further, because of the length of the delay here, prejudice is presumed. "Presumptive prejudice is part of the mix of relevant *Barker* factors and increases in importance with the length of the delay." *Doggett*, 505 U.S. at 648. Said another way, "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.* at 652. "Excessive delay can compromise a trial's reliability in unidentifiable ways." *Id.* at 648. Eubanks demonstrates two of the three types of prejudice that Barker seeks to guard against. Accordingly, the prejudice factor should weigh in his favor.

¶81. Eubanks was not incarcerated before trial; he was out on bail and continued with his training and education. Thus, there was no excessive pretrial incarceration. However, "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." *Barker*, 407 U.S. at 533. Eubanks argued pretrial in his motion to dismiss for lack of speedy trial that he had "experienced numerous separations from friends and family . . . [and] he has experienced a lengthy amount of embarrassment and humiliation from individuals since this matter occurred." He argues that his life has been "greatly disrupted by arrest, the delay between arrest and trial, and the presence of unresolved criminal charges." He asserts the unresolved charges as the reason for his withdrawal from law school and a threat of change to his career. During the delay he was not allowed to commission as an officer in the military and stayed a cadet, which affected him monetarily and did not allow him to continue certain aspects of his military training.

¶82. Historically, the above-described types of prejudice are well within the purview of

31

courts considering Sixth Amendment speedy trial violations and are not limited to defendants incarcerated pretrial. *See, e.g.*, **United States v. Marion**, 404 U.S. 307, 320 (1971) ("Arrest . . . may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."). The prejudice here is very clearly the type that United States Supreme Court Sixth Amendment jurisprudence seeks to safeguard against. *See* **Barker**, 404 U.S. at 532 n.33; **Marion**, 404 U.S. at 320; **Klopfer v. North Carolina**, 386 U.S. 213, 221-222 (1967).

¶83.    Eubanks argues that he was prejudiced due to the Lautenberg Amendment's hindering his military service. According to the Lautenberg Amendment, conviction of a domestic violence misdemeanor makes it a felony to "ship, transport, possess, or receive firearms or ammunition." Jake Yu, *The Lautenberg Amendment and How It Affects Service members*, http://usacac.army.mil/sites/default/files/documents/sja/lautenberg.pdf (last visited Feb. 21, 2022). Soldiers are not exempt from complying with the Lautenberg Amendment. **Id.** A soldier with a domestic violence conviction is severely limited in the scope of their duties for the remainder of their assignment. **Id.** While only a conviction would hamper his military career, the possibility of that conviction certainly ties into the anxiety factor above.

¶84.    The last consideration of the prejudice prong is whether Eubanks's defense was impaired by the delay. "**Barker** explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown." **Doggett**, 505 U.S. at 655. **Doggett** mentions

that a defense can be impaired by "dimming memories and loss of exculpatory evidence." *Id.* at 654. Such is Eubanks's case. The record shows that both his first attorney and the detective that worked on his case and interviewed him struggled to remember the events that had happened nearly three years before. Both struggled to recall the events surrounding that interview and whether written documents from the interview existed. Further, the delay fractured the location of the witnesses on both sides. Had the delay not been as long it would have been easier to secure witnesses on both sides easier and more expediently. Harris would not have been on active duty military orders, and it would have been easier to secure Eubanks's roommate, who was the only firsthand witness to the events, as he would still have been in Oxford as well.

¶85. We "recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at 655. Eubanks makes a showing that, when weighed in light of the presumption of prejudice, tips the instant factor in his favor.

## CONCLUSION

¶86. A balancing of the ***Barker*** factors favors Eubanks. The length of delay weighs heavily in favor of Eubanks, and the reason for the delay weighs in his favor as well. A delay of three years is excessively long, especially when attributed wholly to the State. Based on Mississippi case law, Eubanks's failure to assert his speedy trial right until later in the delay period weighs—at most—neutrally. Further, the prejudice factor should weigh in his favor, since Eubanks was prejudiced by the stress and anxiety over the case due to the excessively

33

long delay and the impairment of his defense. However, the defendant is not required to make an affirmative showing of prejudice under ***Barker*** to prevail on a speedy trial claim. ***Moore v. Arizona***, 414 U.S. 25, 26 (1973). Three of the four Barker factors weighed in Eubanks's favor, and one weighed neutrally; accordingly, the State violated Eubanks's Sixth Amendment right to a speedy trial.

¶87. The only remedy for a violation of the defendant's right to a speedy trial is a reversal of his conviction. ***Strunk v. United States***, 412 U.S. 434, 440 (1973). For the foregoing reasons, I would reverse Eubanks's sentence and render judgment in his favor based on a violation of his Sixth Amendment right to a speedy trial.

**KITCHENS AND KING, P.JJ., AND ISHEE, J., JOIN THIS OPINION.**